(Decided February 10th, 1898).

---

# STATE OF MARYLAND, Use of ELLEN M. PRICE, et al. *vs.* CUMBERLAND AND PENNSYLVANIA R. R. CO.

*Negligence—Accident at Railway Crossing—Contributory Negligence—Failure to Blow Whistle or Ring Bell.*

It is the duty of a person about to cross a railway track to look and listen in order to learn if a train is coming. The fact that no bell was rung or whistle sounded by the train does not relieve a person from the imputation of contributory negligence who attempts to cross a track in front of a train which he sees approaching and by which he is injured.

Plaintiffs' deceased, driving along a country road uphill, attempted to cross a railway track at a point towards which a freight train was backing. There was a clear view of the train. When deceased reached the track his horse balked and the train struck the vehicle, killing the deceased. No brakeman was on the end of the car which struck the vehicle and there was evidence tending to show that no bell was rung or whistle sounded. *Held*, that since the deceased saw the train coming and endeavored to cross the track ahead of it, which he was unable to do because his horse became frightened and balked, he was guilty of such direct contributory negligence as precludes plaintiffs from recovering damages for the injury.

Appeal from the Circuit Court for Allegany County (Stake and Sloan, JJ.)

The cause was argued before McSHERRY, C. J., BRYAN, BRISCOE, PAGE, BOYD and PEARCE, JJ. (Jan. 13, 14, 1898.)

*Benjamin A. Richmond* and *Clayton Purnell*, for the appellants.

*Ferdinand Williams* and *Robert H. Gordon*, for the appellee.

BOYD, J., delivered the opinion of the Court.

This is an action brought in the name of the State of Maryland for the use of the widow and daughters of Dr. Thomas C. Price against the Cumberland and Pennsylvania Railroad Company, founded on the alleged negligence of the company's agents, resulting in the death of the doctor. At the conclusion of the testimony offered by the plaintiff, the Court below instructed the jury that there was no evidence legally sufficient to entitle the plaintiff to recover and directed a verdict to be rendered for the defendant. That action of the Court presents the only question for our review. There were only two witnesses to the accident examined and their testimony is very unsatisfactory in reference to most of the material facts involved in the case. The accident happened at a point where a county road crosses the railroad on what is called a " Y " track. The railroad, in order to get to Frostburg by a practicable grade, runs westerly to a point near Borden Mines, and then easterly for some distance and then westerly again towards Frostburg, thus gradually ascending the hill. The train with which we are concerned was composed of an engine and coal cars, and after stopping at a coal tipple, which is near the westerly terminus of the main track, was backing up the " Y " track when the collision with Dr. Price's buggy took place on the crossing above spoken of. He had been to Allegany, a neighboring village, to see a patient and was on his way to Frostburg, where he resided, when his buggy was struck by the train and he died almost immediately after the accident. The witnesses who testified seem to have had no

definite idea of the distances between the points spoken of in their testimony or even of the length of the train.   There was a plat used at the argument which, although not shown in the record to have been proven to be correct, we under-stand to have been conceded to be so in this Court.   Assuming it to have been correctly made according to the scale marked on it, the distance from the coal tipple to the point where the " Y " track leaves the main track is about four hundred feet, and from the latter point to the county road about six hundred feet.   The witnesses who saw the accident were Mrs. Frank Devore and Joseph Malooley.   It is impossible to tell from the record with any precision where the former was, as the points she speaks of are not located on the plat, but she said she was on what we have called the " main track," by which we mean the part of the track before entering the " Y," and that is from three to four hundred feet from the county road at the nearest points, as laid down on the plat.   Malooley was on the car that struck Dr. Price's buggy, being the rear car of the train, or as it was being pushed backwards up the grade the first car to reach the crossing.   Mrs. Devore thought the accident happened about six o'clock in the evening, October 26th, 1896, but she said she could see the train and Dr. Price plainly. She described with some detail what occurred at the crossing, even to the number of times the doctor struck his horse. So, whatever the hour was, it was still sufficiently light for any one to see the train moving.   As Dr. Price reached the railroad his horse balked and remained on the track long enough to let the buggy in which he was riding be caught by the train, although the horse escaped.

Suits for damages resulting from collisions with railroad trains by persons crossing the tracks have been so numerous in this State, that there is no longer much difficulty about the general principles of law applicable to them, and it is usually only necessary to examine carefully and critically the facts in any particular case to ascertain the extent of the liability of the defendant.   Our statute which author-

izes suits to be brought for the death of a person caused by the wrongful act, neglect or default of another limits the right of recovery to such act, neglect or default as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, and hence the test in this case is whether Dr. Price could have recovered if he had survived the injuries sustained by him.   To do so it would have been incumbent on him to prove that the action was caused entirely by the negligence or default of the defendant's agents or agent, and it must not have appeared from the evidence that his want of ordinary care and prudence directly contributed to cause the accident.   *Burns' case*, 54 Md. 113.   To put the company on defence it was not sufficient to prove negligence of its agents, but also that such negligence caused the injury.   If in attempting to prove those essentials the evidence disclosed the fact that the accident really happened as a result of the doctor's own negligence, then the plaintiff is precluded from recovery because the defendant cannot be made responsible for results caused by the fault of the one whose injuries are the basis of the suit.   So long as there is any reasonable doubt on that question the jury must resolve it, but when the fact is so clearly established by the evidence as to leave no room for rational minds to differ, without entering into the realms of speculation and conjecture, then it is the duty of the Court to determine it.   The legal sufficiency of the whole evidence to sustain a verdict is as clearly for the Court as is the weight or credibility of the testimony for the jury when the facts are in dispute.   Of course when the Court is called upon to pass upon the legal sufficiency of the evidence it must assume it to be true. These general propositions have been so frequently announced by this Court that we deem it unnecessary to cite authorities to sustain them, and we only refer to them because it is proper that they should be borne in mind as the facts in the record are considered and the law applied.

The negligence relied on by the plaintiff consists of the

alleged failure of the defendant's agents to give any signal of the approach of the train.   Mrs. Devore swore she did not hear the whistle blow or the bell ring, although she was close enough to have heard them.   It is true that she did not notice that there was another train on the main track, the engine of which did whistle, according to the witness Malooley, but it must be admitted that there was some evidence that the engine of the train that caused the accident did not whistle and the bell was not rung.   It is also claimed by the plaintiff that there was neither light nor trainman on the first car, as it approached the crossing, to give warning of its approach.   It is apparent, however, that a light would have been of no service as it was not dark enough to require it.   Mrs. Devore said " it was light enough ; I could see everything plain," and we have already seen the distance she was from the crossing when the accident happened.   Nor is there any positive proof that there was not a trainman on the car.   Mrs. Devore's evidence as to that was as follows : " Q. Mrs. Devore, did you see anybody on the end of the train ?   A. I did not see anybody on the end of the train.   Q. I mean the rear end of the train ?   A. I never took no notice.   Q. You never took no notice ?   A. No, sir ; I was too excited."   Malooley was asked " were there any brakemen on the end of the train ?   A. I do not know whether there was or not.   Q. Was anybody on the end of the train ?   A. They might have been on there and I not seen them."   So the only evidence tending to show negligence was the failure to ring the bell or blow the whistle, if those omissions be conceded to be negligence.   But there is no evidence from which it could be properly inferred that the omission to do either of those acts in any way misled Dr. Price or caused the accident.   The only possible object in giving such signals is to warn persons using the county road of the approach of trains.   It was the duty of Dr. Price to look and listen as he approached the crossing to ascertain whether a train was coming, and the failure on the part of the agent of defend-

ant to blow the whistle or ring the bell did not excuse him from the exercise of that reasonable precaution. *Neubeur's case*, 62 Md. 391. We see nothing in the record that would have justified the jury in finding that there was any difficulty in his seeing the train as he approached the railroad. It is true that the evidence showed that there was a rail fence along the side of the county road, and some locust and maple trees growing on the fence line, but it is not shown that they would prevent any one driving in a buggy as Dr. Price was from seeing the railroad—indeed it does not appear whether the foliage was still on the trees on the 26th of October when the accident happened. Then, too, the evidence of Mrs. Devore shows she had no difficulty in seeing the doctor as he drove along the road, and he could certainly have seen a train, even if he could not have heard it as it was pushed up that grade. But if his view of the railroad was obstructed so as to prevent him from seeing whether a train was approaching, it was his duty to stop, look and listen before attempting to cross. " And if a party neglect these necessary precautions, and receive injury by collision with a passing train, which might have been seen if he had looked, or heard if he had listened, he will be presumed to have contributed, by his own negligence, to the occurrence of the accident; and unless such presumption be repelled, he will not be entitled to recover for any injury he may have sustained." *Hogeland's case*, 66 Md. 149.

But it was argued with great ingenuity and ability by the counsel for the appellant that the accident was caused by reason of the fact that the train was standing still when Dr. Price started to cross the track, but started suddenly and without warning, overtaking him before he could escape from the track, thereby causing the accident, and that there was at least sufficient doubt about that to require its submission to the jury. The evidence, however, does not sustain that contention, and it would have been impossible for the jury in the face of the testimony in the record to have reached that conclusion by any method short of mere

conjecture.    It is true that the train had been standing still, but just when it started and exactly where he was when it did start are not shown, but that he was not on the crossing at the time the train started is conclusively shown by the two witnesses who saw the accident.    Mrs. Devore, in answer to the question how far the rear end of the train (meaning the end nearest the crossing) was from the crossing when the train was standing still, said she could not tell exactly, but finally said, on being asked whether it was the length of the Court room of the Circuit Court for Allegany County, where the case was being tried, that it was not that far away.    Then followed this portion of her testimony : " Q. Then you saw it standing there ?   A. Yes, sir.   Q. And you saw the horse on the crossing ?   A. No, sir.   Q. Coming up to the crossing ?   A. *He was not on the crossing, he was a good way from the crossing when the train was standing still, but as he came towards the crossing the train started to come up."*   The witness Malooley had a good opportunity to see how the accident happened, as he was on the car that struck the buggy and on the side of it next to Dr. Price, as he approached the track.    He was not in the employ of the Railroad Company, but was riding home from the mines where he worked.    He gave this account of the accident :  " Q. You were on the side of the car coming up the hill, which way were you looking ?   A. I was looking right towards where the doctor was driving up towards the train.    Q. Now how far was your car from the crossing when it was standing still ?   A. I could not say. Q. You cannot say ; now when the train started where were the doctor and the horse ?   A. Why the doctor was driving ; when I took notice to him the doctor was driving right up.   Q. Now tell the jury you saw the doctor drive up ; tell the jury ?   A. I saw the doctor drive up towards the hill ; his horse stopped and balked on the crossing.   Q. His horse balked on the crossing ?   A. Yes, sir.   Q. Then what happened ?   A. He tried to get the horse across the crossing, and he refused to go ; he tried to pull him back,

190   STATE, Use of PRICE, vs. C. & P. R. CO.

Opinion of the Court.                    [87

and he refused to come back; he clapped his lines and I heard him hollow "get up" twice, and when the train drawed close the horse jumped out and it caught the buggy. Q. You saw the doctor coming up to the track? A. Yes, sir; saw the horse on the track. Q. And the doctor would have gotten across if the horse had not stopped? A. If he had not balked. Q. And he got on the track, the horse and buggy, and the doctor slapped the lines and told him to get up? A. Yes, sir; and as the train came up it hit the buggy." On cross-examination he said he could see Dr. Price coming towards the crossing, and he thought he could see him the length of the Court room from the crossing, and then testified as follows: " Q. Well, then, Dr. Price could have seen the train that far away? A. I saw Dr. Price see the train. Q. You saw Dr. Price see the train? A. Yes, sir. Q. How do you judge that? A. He was looking at it; he was looking towards me anyway. Q. How far was the train from the doctor when the doctor tried to make the crossing, do you know? A. I could not say how far he was at all." The evidence therefore shows conclusively that the train was moving before Dr. Price reached the crossing and that he saw it coming. Mrs. Devore said she saw him hit the horse three times and the horse jumped back three times; that "the horse pulled towards Frostburg and the horse balked in the middle of the track, and I saw him whip him again and he balked back and he staid there until the cars ran over him." The approach on the county road to the railroad is described as very steep, and the plat shows it is at such an angle that a horse moving up the hill might well be frightened by a train coming from the direction this one was. That was probably the cause of the horse balking, but however that may be we think it is apparent from the testimony that the train did not start to move after Dr. Price had driven on the railroad, but that he saw it coming and endeavored to cross the track ahead of it. Had it not been for the unfortunate fact that this trusted animal failed its master on that momentous

occasion, he would doubtless have gotten over safely, but that was a risk he assumed. We know of no law that would permit a recovery under such circumstances. Indeed, it was conceded in the argument that if the train was moving when he attempted to cross, the plaintiff could not recover. As the evidence convinces us that such was the case, and that there was no conflict on the subject and nothing from which the jury could properly infer the contrary, the judgment of the Court below must be affirmed.

*Judgment affirmed with costs.*

(Decided February 10th, 1898).