JOHN K. COWEN AND OSCAR G. MURRAY, RE-
CEIVERS OF THE BALTIMORE AND OHIO RAILROAD COM-
PANY, *vs.* CLINTON WATSON.

*Contributory Negligence—Driving Under Railway Bridge While
Train, Whose Approach Could Have Been Seen, was Passing
Overhead—Blowing Whistle of Train on Railway Viaduct Over
County Road—Waiver of Exception to Refusal to Take Case
from the Jury at End of Plaintiff's Testimony.*

Defendant's railway crossed a county road by a viaduct 80 feet high,
near a point where it was necessary for the engine driver to give sig-
nal by whistle before crossing a bridge over a river. Ordinarily, the
whistle was blown by engines before the viaduct was reached. The
tracks in both directions were visible from the road below. Plain-
tiff was driving a wagon with two horses on this road and while he
was under the viaduct the whistle of a passing train was sounded
twice directly overhead, whereby the horses became frightened and
ran away, causing the injury for which this action was brought.
*Held*, that although the defendant was guilty of negligence in blow-
ing the whistle directly over the said crossing, instead of before
reaching or after passing it, yet since the plaintiff could have seen
the train approaching and avoided going under the viaduct while it
was passing overhead, and moreover because he was walking along-
side of the horses and not seated in the wagon, he was guilty of such
contributory negligence as precludes a recovery.

When the defendant at the close of plaintiffs' evidence offers a prayer
asking the Court to take the case from the jury, and, although ex-
cepting to the action of the Court in refusing it, yet proceeds to offer
evidence in defense, he thereby waives the exception.

Appeal from the Circuit Court for Cecil County (STUMP
and MARTIN, JJ.) The plaintiff obtained a verdict and
judgment thereon for $2,083.

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*John S. Wirt* and *W. Irvine Cross*, for the appellants.

A careful examination of the plaintiff's testimony will
show that as he was passing along the public road, which

runs under the east end of the B. & O. Bridge across the
Susquehanna River, his horse was frightened by the whistle
of the engine. There is no evidence whatever that such
whistling was unnecessary, or was the result of want of
reasonable care on the part of the defendant's servants in
the management of its trains. Yet such proof of negligence
on the part of the defendants was an essential part of the
plaintiff's case. *Frech's case*, 39 Md. 576; *Foy's case*, 47
Md. 76; *Burns' case*, 54 Md. 113; *Miller's case*, 58 Md.
224; *Barnard's case*, 60 Md. 559; *Stebbing's case*, 62 Md.
515; *Savington's case*, 71 Md. 599; *Pumphrey's case*, 72
Md. 82; *Duvall's case*, 73 Md. 516; *Good's case*, 75 Md.
526; *Burkhardt's case*, 83 Md. 522.

The sounding of the whistle of the engine is a necessary
and usual incident of the running of trains. The train of
the defendants was lawfully on its bridge, and the plaintiff's
horse was frightened by the noise of the whistle of the en-
gine, which the defendant's servants had a right to sound
in the reasonable and careful management of its trains. It
is for the plaintiff to show that the whistling was unusual
or unnecessary. This he utterly fails to do. On the con-
trary he admits that he was very familiar with the crossing
for fourteen years and had heard engines give the two sharp
whistles as the trains approached the signal tower at the east
end of the bridge. While the plaintiff states that he did
not hear the long whistle of the engine, it seems to us that
is immaterial in view of the fact that he admits that he saw
the train when within twenty-five feet of the bridge, yet went
on under when he knew it was the custom for the engine to
give the two blasts of the whistle which frightened his team.
While the plaintiff says that he was 25 feet from the rail-
road, it is clear if he had looked when he passed the north
end of the ice-house he could have seen the train at a dis-
tance of at least 50 feet from the bridge. He states that
his horses were used to the cars and that on this occasion
his horses were not frightened by the appearance or noise
of the train, but went under the bridge, and after they had

passed under, one of them was frightened by the two blasts of the whistle, or rather by the second blast.

The mere sounding of a locomotive whistle at a crossing or other places where teams are likely to be frightened thereby is not of itself negligence, and the plaintiff having the burden of proof of negligence must show that it was done under such circumstances as made it at that time negligent. *Wood's Railway Law*, vol. 2, page 1332; *Cincinnati, I., St. L. & C. R. Co.* v. *Gainers*, 104 Ind. 526; *Cahoon* v. *Chicago & N. W. R. Co.*, 85 Wis. 570; *P., W. & B. R. R. Co.*, v. *Stinger*, 78 Pa. St. 219; *Favor* v. *Boston & L. R. C.*, 114 Mass. 350; *Lamb* v. *Old Colony R. R.*, 140 Mass. 79.

In this case the plaintiff was approaching an overhead crossing where his view of westbound trains was totally obscured, and his view of eastbound trains was partially obscured. He was required to be vigilant in the use of his senses and to use due care. Yet we find him, when he got behind the ice-house, alighting from his wagon and putting himself in a position where he could not well control his team if frightened.

Under the circumstances the view of trains being obscured it was the duty of the plaintiff to stop, look and listen. He admits that he did not stop, and his failure to do so is such contributory negligence as disentitles him to recover.

The rule is well settled that the failure to look and listen as one approaches a railroad crossing is negligence *per se*. But it is not negligence *per se* to fail to stop in all cases, although some Courts have held it to be so. It is difficult to lay down a rigid rule for all cases. It depends upon the circumstances of the particular case whether the failure to stop is such an act of negligence on the part of the plaintiff as will justify the Court in taking the case away from the jury. There are such cases, and we think the present case is one of them. *P., W. & B. R. R. Co.* v. *Hogeland*, 66 Md. 161.

The plaintiff also states, as a matter within his knowledge,

that some days this whistle could be heard at the ice-houses and some days it could not, when the wind was northeast. With this knowledge on the part of the plaintiff, he certainly did not use due care in approaching this crossing, because he did not stop and listen while his team was behind the ice-houses. The danger to life and limb of the traveling public who have to cross railroads at grade is great, and as the country becomes more thickly settled these accidents multiply. As a matter of sound policy it is desirable that the tracks of railroads, so far as practicable, should pass over or under public highways. There is then no danger of actual collision between the train and the team of travelers on the highway, and that element of danger is eliminated. But trains passing over or under teams are very liable to frighten horses. In most cases of such crossings the traveler has a better opportunity to see and hear the train than the train employees have to see and hear the former. The traveler is still liable to accident by having his team frightened, and if the rule of care for approaching crossings is relaxed, then an additional burden is put upon railroad companies, as they would be held liable for every accident resulting from frightened teams, where the plaintiff is willing to swear that he did not hear the whistle of an approaching train. Such crossings as a rule are expensive, and railroad companies will not be disposed to put in overgrade crossing, if thereby they materially increase their liability for damages resulting from frightened teams. There being no danger of collision, the disposition of a traveler is not so strong to listen for the whistle or to heed it when he is driving a team which is used to the cars. This was the present case. The plaintiff had confidence in the team, saw the train, but voluntarily went under the bridge. He assumed a risk, the consequence of which he should bear and not the defendants.

*Joshua Clayton* and *Albert Constable, Jr.* (with whom was *Albert Constable* on the brief), for the appellee.

There was certainly evidence that the defendants' train

failed to signal its approach to the county road. And this was negligence according to all the authorities. *Norton* v. *Eastern R. R.*, 113 Mass. 366; *Prescott* v. *Eastern R. R.*, 113 Mass. 370; *The Penn. R. R.* v. *Barnett*, 59 Pa. St. 259. Then, it was proved, and not denied by defendants, that as the train which frightened plaintiff's horses passed over the county highway, two sharp blasts of the locomotive steam whistle were sounded directly over the horses' heads. That certainly was, *prima facie*, a negligent act. *P., W. & B. R. R.* v. *Hogeland*, 66 Md. 162; *Fullarton* v. *Manchester, South Junction, etc., Ry. Co.*, 14 Common Bench (N. S.) 54; *Lamb* v. *Old Colony R. R.*, 140 Mass. 81.

As to this act of sounding the whistle directly over the highway it was, no doubt, open to the defendants to show that it was an act necessary to be done, at that place, in the reasonable and proper conduct of their business. But undeniably it was a dangerous thing to give sharp blasts from a locomotive steam-engine directly over a county highway where travelers might be passing at any moment with horses and teams liable to be frightened and to run away. It was, therefore, *prima facie* evidence of negligence. The proof was, that for a mile and more across this bridge to the Harford shore, from which direction the train came, the track was perfectly straight, and there was, therefore, no reason for sounding the whistle at the point where the bridge crosses the county road. Indeed, the evidence of both plaintiff and defendants' shows that the whistles, on engines passing eastward across the bridge, were always sounded while the trains were passing over the water and several hundred yards before reaching the Cecil shore. There was evidence in the case that no whistle, prior to this accident, had ever been sounded by an engine when in the act of crossing the county highway.

Defendants rely on plaintiff's omission to stop while he was passing over the 198 feet where his view was cut off by the ice-house. But the conditions must be recollected : As he came up the Perryville road he first came to the fertil-

izer works.    Then, after passing them, there was an unobstructed view of the bridge almost to the Harford shore. The space between the fertilizer works and the ice-house was 530 feet.    As he drove his horses at a walk the 530 feet he both looked and listened for a train, but none was within sight or sound.    Of course, it was unnecessary to stop in this 530 foot space, as he could see perfectly well without stopping.    Passing over this space, he next came to the ice-house.    He was at that time 272 feet from the bridge.    For the first 198 feet the ice-house cut off his view toward the Harford shore.    At 75 feet from the bridge he came from behind the ice-house, but could get no view until he had gone 20 feet further.    He was then 50 feet from the bridge, had a clear view, and saw the train coming across the river, distant several hundred yards from the public road.    Now, it cannot be reasonably contended that he was bound to stop while he was traversing the 198 feet behind the ice-house.    Why should he stop there?    Not for observation certainly, for he was behind the ice-house.    Not to listen, for it was a smooth road, and his team was proceeding slowly in a walk.    Even the Pennsylvania cases, in regard to grade crossings, do not go to the extreme of requiring that a traveller should stop at a point where he can get no view. On the contrary, it has repeatedly been held in that State, that a traveller, approaching a grade crossing, will not, by stopping at a point where the view is obstructed, be free from the imputation of negligence.    The first point at which he could have seen a train coming across the river was 20 feet beyond the ice-house and 50 feet from the bridge.    Was he bound to stop there?    If so, why?    He then saw and knew the exact location of the train.    For what purpose should he have stopped there?    Not to observe.    Not to listen.    All that his senses could have brought him, he already knew.    It is clear that, up to the moment he came to this point, 20 feet beyond the ice-house, 50 feet from the bridge, there had been no negligent act or omission on his part.    Now, the question comes, should he have remained

at that point, within 50 feet of the bridge, or should he have gone on?

Plaintiff in going forward instead of remaining where he was, was not going from a place of safety into a place of danger. It was obviously dangerous to remain where he was. Facing the train elevated so high in the air above their heads, the situation for his horses was one to which they had never been accustomed, and plaintiff felt uncertain as to their behavior. But in going forward he felt the confidence of a man who treads his accustomed paths. How can it be possibly said that plaintiff was bound to try the experiment of permitting his horses to face a moving engine and train of cars elevated eighty feet above their heads at a distance of fifty feet? The bravest and most experienced of Pratt street dray horses might well be distrusted in such a position.

FOWLER, J., delivered the opinion of the Court.

The plaintiff was injured on the 16th of November, 1898, under the following circumstances: He was driving two horses attached to a wagon which was loaded with coal. As he passed under the bridge over which the track of the Baltimore and Ohio Railroad crosses the Susquehanna river his horses became frightened, ran away and he was badly injured. At the point where the accident happened a county road passes under the bridge—the latter being elevated about eighty feet above the former. While crossing the bridge and when passing above the county road the whistle of one of the engines of defendant going east, and drawing a passenger train, was sounded twice for the purpose of informing the signal-men at the tower on the east side of the bridge that the signal displayed at the tower had been seen by the engineer. According to the testimony of the plaintiff it was the sounding of the whistle which caused the accident and produced the injury, damages for which he seeks in this suit to recover.

At the close of the plaintiff's testimony the defendant

asked the Court to take the case from the jury, but this request was refused, the defendant excepted, and offered testimony in its defense. By proceeding with the case after its first prayer was refused, the defendant must be held to have waived its exception to that action of the Court. But the same questions, namely, whether, first, there is any legally sufficient evidence in the case to prove negligence on the part of the defendant, and secondly, if there was such negligence on the part of the defendant, whether the plaintiff was guilty of such contributory negligence directly contributing to the injury as will prevent a recovery, are again presented by the defendant's tenth and eleventh prayers which were refused. The ninth prayer of the defendant raises the question as to whether, under the circumstances of this case, as set forth in that prayer, the plaintiff was not bound "to stop, look and listen." The defendants excepted to the refusal of its ninth, tenth and eleventh prayers, and to the granting of the plaintiff's two prayers. The verdict and judgment being in favor of the plaintiff, the defendant has appealed.

The only questions, therefore, before us on this record are the two principal questions which are generally involved in actions to recover damages for injury caused by the negligent act of another, that is, first, was the injury caused entirely by the negligence of the defendant, or, secondly, did the plaintiff by his own negligence, directly contribute to his own misfortune?

We will consider these two questions in the light of the testimony disclosed by the record, and the conclusion at which we arrive will enable us briefly to dispose of the legal proposition involved in the prayers of the plaintiff which were granted, and the three prayers of the defendant which were refused.

By the testimony of the plaintiff it appears that the negligence of the defendant, which he relies on, are first, the failure to blow the whistle before reaching the crossing, and the blowing of the whistle while the train was in the act of

passing over the bridge immediately above the crossing. The only testimony we have that there was a failure to give the signal of the approach of the train is the bare statement of the plaintiff, that although he listened, he did not hear it. In view of the testimony offered by the defendant showing, as we think, beyond doubt, that the approach signal was in fact given, this negative testimony of the plaintiff is, to say the least, very unsatisfactory. But assuming, without so deciding, that such testimony as the plaintiff gave would, in a different case, be legally sufficient evidence to be submitted to the jury, we think it is clear it has no application whatever to the case at bar, because it is conceded by his counsel and the plaintiff's evidence is clear to the effect, that the sole cause of the injury was not the failure to give the signal of the approach of the train, but the blowing of the two blasts over the heads of the horses. "The sole cause of the accident," argues counsel, "was the careless act of the engineer of the train giving two sharp blasts of the whistle directly over the highway. But for that act there would have been no accident." The plaintiff testified that "the horse was not paying any attention to the cars or the noise until he blew the whistle. As soon as he blew the whistle the horse jumped." And again he says it took the second whistle to make the horse run, and that he did not think he would have run away but for the second whistle.

We will therefore pass to the consideration of the second act of negligence relied on by the plaintiff. His testimony is clear and affirmative, as we have seen, to the fact that the blowing of the two blasts over the highway was the cause of the accident. This is not the case of a passenger seeking to recover damages for negligence of the railroad company, and therefore no presumption of negligence arises from the simple happening of the accident—and the *onus* is upon the plaintiff to show that the defendant did not use ordinary care. *Pumphrey's case*, 72 Md. 82; *Bahr's case*, 28 Md. 647. It is also incumbent on the plaintiff to

prove circumstances from which it may fairly be inferred
that there is a reasonable probability that the accident re-
sulted from want of some precaution which the defendant
might and ought to have resorted to, and to show with
reasonable certainty what particular precautions should
have been taken to avoid the injury. *Stebbing's case*, 62
Md. 504. But when the plaintiff offered proof of the
blowing of the two blasts over the highway on which he
was traveling, and when at the same time it appears from
the evidence offered by the defendant, that while the sound-
ing of the whistle on the bridge was a necessary and proper
regulation, yet that it could have been and usually was
sounded after or before passing the highway, there was suf-
ficient evidence to go to the jury that the act complained
of as an act of negligence was such; *Hogeland's case*, 66
Md. 162; *Rupard* v. *Railroad*, 88 Kentucky, 280; *Barnett's
case*, 59 Pa. St. 259; and that it could have been avoided by
the use of ordinary care on the part of the defendant. It is
true, as shown by the evidence, that it is impossible for the
engineer at this point at the same time to watch for the signal
at the tower and look out for travelers on the highway, but
for this very reason the defendant should mark the point
on the bridge where it crosses the highway, and instruct
its agents not to blow the whistle at that point. And thus
that which, in this case, is alleged to be the sole cause of
injury, will be avoided.

This brings us to the controlling question in the case:
Was the plaintiff guilty of such contributory negligence as
will prevent recovery? We are clearly of opinion that he
was. In the first place it may be remarked that the cross-
ing in question is not the ordinary grade crossing, but that
it is one of unusual elevation overhead, the bridge over
which the defendant's trains pass being from 70 to 90 feet
high. At the point in question the train was elevated
about 80 feet above the road, and the plaintiff testified that
from *any point* along the road on which he was travelling,
until within a few hundred yards of the bridge, the trains

going, as this train was, from Baltimore to Philadelphia could be seen nearly all the way across. But surely it would need no evidence to establish this important fact. It must be, from the great elevation of the bridge that it and the trains passing over it are visible for a great distance. It also appears from the evidence that the noise produced by the movement of trains over the bridge was much greater than that of a similar train on the ground. All the witnesses testify that when going north, on the road towards the bridge, a considerable portion of the latter was plainly visible, except when the view was obscured by two buildings—a factory and an ice-house. Now, when it is remembered that the whole time occupied by a passenger train in crossing the bridge is three minutes, it would seem to be clear that it was the duty of the plaintiff either to look from a point where he could see, or to stop when in a place of safety and listen. *Hogeland's case,* 66 Md. 161; *Neubeur's case,* 62 Md. 399; *Price's case,* 87 Md. 188. But he did neither in such a manner as to entitle him to recover. He says he looked, but did not see the train. But this is not sufficient. It will not do to say that he looked and did not see, and listened and did not hear, when the facts of the case show that if he had looked or listened with the requisite care and caution he must have seen or heard it. For a distance of about 500 feet, that is, from the factory to the north end of the ice-house, the train, by his own testimony, could have been seen or heard by the exercise of ordinary care and caution nearly all the way across the bridge—a mile—and if the plaintiff failed to do what the law requires of him, he must suffer the consequences of his own rashness. *Price's case,* 87 Md. 183. In addition to this failure to see or hear the train approaching, he left the usual and proper position which he should have occupied while driving his team, and walked until the train was over his head, when he took hold of one of the horses, leaving the other without control. If he had remained upon the seat of the wagon he could have not only used the lines for

the purpose of preventing the horses from running away, but the brake, if in working order, would also have been within his reach. The plaintiff testified that he could not tell whether injury would have happened if he had remained in the wagon, but that he could have had better control there with the lines in his hands. But it was argued in his behalf that " he was not bound to anticipate and guard against a possible negligent act of the defendants' servants," and that " he had no reason to expect they would sound the whistle directly over the public road." As we have said, this was undoubtedly an act of negligence on the part of the defendant, but the plaintiff was not thereby justified in driving into a place of danger, when, by the proper and reasonable use of his eyes or ears, he could have remained in a place of safety. We think the usual rule applicable to grade crossings should be applied to crossings whether under or over railroads. No greater degree of care should be required of one party than the other, (*Owing's case*, 65 Md. 502), and where the crossing is dangerous the duty of care and caution is mutual and reciprocal. *Hogeland's case, supra; Rupard* v. *R. R. Co.*, 88 Ky. 280; *Barnett's case*, 59 Pa. St. 268. And so in regard to the rule as to stopping to listen. It should be applied to all crossings where the view is obstructed, or when, for any other reason, it is evident that the traveller can hear better and avoid danger by stopping to listen in a place of safety. In *Rupard's case, supra,* the public road crossed the railroad by a bridge about 20 feet high. While the plaintiff was passing over the bridge her horse became frightened at the noise made by the train going under the bridge, and she was injured. It was held it was negligence of the defendant to fail to give notice of the approach of the train, but that the case was properly taken from the jury because of contributory negligence of the plaintiff. " She was familiar with the crossing and its surroundings. The track in the direction that the train was coming was clear of obstruction several hundred yards, and she could have seen the ap-

proaching train that distance had she looked." In the case
at bar the plaintiff testifies that he did look and listen, but
neither saw nor heard it. As we have said, he was bound
to see or hear it under the circumstances in evidence. See
also *Barnett's case, supra,* in which the necessity of giving
notice of approach of train where public road crosses
above the railroad.

                                        *Reversed without a new trial.*
(Decided June 14th, 1900.)

McSHERRY, C. J., delivered the following separate opin-
ion.

I agree that the judgment in this case ought to be re-
versed without awarding a new trial, because the plaintiff
was guilty of negligence which directly contributed to pro-
ducing the injury he sustained ; but I do not agree that the
defendant is chargeable with any negligence at all.

The only evidence adduced and relied on to convict the
defendant of negligence is that which shows that a whistle
was blown directly on an *over-head* crossing of a public
highway. The railroad is some eighty feet above the high-
way. Now, this blowing of the whistle was, if negligence
at all, either negligence *in se,* or it was negligence because
of some other circumstances which made it so. If the blow-
ing of the whistle over the crossing was negligence *in se,*
then the servants of the company were guilty of negligence
when they blew it ; but if the blowing of the whistle at that
point was not negligence *in se* then something more than
the mere blowing of it was necessary to make out an act of
negligence. This was not a grade crossing, and the case
differs in that respect from *Hogeland's case,* 66 Md. 149.
Neither the first nor the second signals given by the whistle
were given as a warning of the approach of a train to the
crossing. The first blast, sounded some distance away from
the crossing, was intended to attract the attention of the
signal-man in the signal-tower. When the signal-man was
thus apprised of the approach of the train, it became his

duty, if the block ahead of the approaching train or the track on the bridge was clear, to give the proper signal advising the engine-man that it was safe to advance or if the contrary conditions existed warning him to stop; and it then became the duty of the engine-man to sound two sharp whistles so as to apprise the signal-man that the tower-signal had been seen by the engine-man. This rule is an absolutely necessary one in the operation of a railroad, especially at a place like the one in question. On the bridge over the Susquehanna River there is but a single track, whilst the road on each side is a double-track road. Trains going in both directions—that is from Baltimore to Philadelphia, and from Philadelphia to Baltimore—must pass over this single track on the bridge. It would be reckless madness if no rule existed requiring the approach of a train, in either direction, to take this single track, to be signalled to the tower-man who controls the switches, and requiring the engine-man to notify the tower-man that the signal of the latter had been seen by the former. In the absence of a rule providing that the engine-man must call for a signal, that the tower-man must display a signal, and then that the engine-man must give notice that he had seen the signal, it is perfectly apparent that collisions on this single track, or beyond it on the double tracks, and a consequent appalling loss of life would be constantly imminent and would frequently occur. The rule, therefore, is not only reasonable but necessary. Being necessary it was one which the company had the right to adopt and the adoption of it was therefore lawful. A signal given in obedience to such a rule cannot be negligence *in se*, for a rightful act, unless wrongfully done, cannot be a negligent act. If, then, the right to sound the whistle existed, the mere sounding of it was not wrongful, but the wrongful sounding of it would be the wrongful doing of an act which the company had the right to do rightfully; and this wrongful doing of a rightful act would be negligence. Hence, it is obvious that it is not the bare act itself, but a condition back of the act which

constitutes the negligence.   The act, therefore, is not neg-
ligence *in se.*    If the conditions exist which make it negli-
gence then it would be a negligent act; if they do not exist
then it would not be negligence.

Now, the plaintiff must both allege and prove that the
defendant had been guilty of negligence.   He must, there-
fore, prove the existence of the conditions which make the
act relied on as negligence a negligent act, or he fails to
prove negligence.  And he fails to prove negligence because
he simply proves, if he proves no more than the act itself,
an act which may or may not be negligence, as undisclosed
circumstances may make it.   But it may be retorted that
the blowing of the whistle *over* the crossing was negligence
because ordinarily it was blown somewhere else.   That if it
had been blown *before* reaching the crossing or *after* passing
it there would have been no accident.   Thus the *place* of
the blowing is relied on as the circumstance to show that
the *act* of blowing was negligence.   But this would beg the
question.   The *necessity* for the blowing and not the *place*
where blown must determine, in a case like this, whether
the blowing was rightful or wrongful.   If there was *no*
necessity for blowing over the crossing and an injury was
likely to result from a blowing at that point, then blowing
there was negligence.   If there *was* a necessity for blowing
there, then the fact of blowing was not negligence even
though an injury did happen.   To prove negligence, then,
it was incumbent on the plaintiff to show not only the
blowing over the crossing, but that there was no *necessity*
for the blowing at that point.   This must be so unless the
burden is on the defendant to show that there was *no* negli-
gence, instead of the burden being on the plaintiff to show
that there *was* negligence.   The difficulty of proving neg-
ligence by proving that there was no necessity for the
doing of the act alleged to be negligent is no reason for ex-
empting the plaintiff from supplying the proof or for cast-
ing on the defendant the duty to show that there was *no*
negligence.   Now, there was not a particle of evidence in-

troduced to show that there was no necessity for the whistle being sounded just where it was sounded, except the fact that ordinarily it had been sounded before or after crossing the highway. That such had been usually the course may be conceded, and yet the question as to whether it was necessary that the signal should be sounded where it was sounded remains unanswered. The fact that usually the whistle had been blown before or after passing the crossing by no means proves that it never had been blown there before, or that upon this occasion it was not necessary to blow it at that point. In the nature of things no precise, definite place for sounding the whistle to indicate that the tower-signal has been seen, can possibly be prescribed, because the place where the engine may happen to be when the tower-signal is exposed will necessarily vary. The rapidity of the train and the promptness with which the signal is displayed must be considered ; and the promptness with which the signal is displayed may often depend upon whether the next succeeding block beyond the tower is clear of trains. A fixed whistling-post might and probably would be frequently passed before the tower-signal could be given ; or it might not be reached when the signal was displayed. There are so many contingencies which arise in the practical operation of a railroad that it seems to me there can be only one effective rule on this subject, and that is the one in force, viz., that upon the display of the tower-signal the answer shall be given by the engine-man. The whole surroundings create a condition which cannot have relation to points of space or matters of distance, but can only relate to successions of interdependent acts.

It is thus quite evident that a blowing *over* the highway may not be negligence even if usually there was no blowing there. But if you say it was negligence to blow there unless the defendant shows that there was a necessity for blowing there, I answer that you then invert the rule of law as to the burden of proof and you cast upon the defendant the duty to show that there was *no* negligence, though the

settled doctrine in these cases is that the plaintiff must show that there *was* negligence ; and he obviously does not show it by proving a fact which may or may not be negligence, and which, therefore, until explained by him, is absolutely neutral.. If an act may or may not be negligent, as surrounding circumstances make it the one or the other, it is clearly incumbent on the person relying on it as negligence, to show the facts which make it what it is alleged to be and what it must be to support a recovery.   This was not done, for nothing was proved on this branch of the case but the fact that the whistle was blown over the crossing and the further fact that usually the signal was given elsewhere ; and so it seems to me the plaintiff failed to prove that the defendant had been guilty of negligence in sounding the whistle over the crossing.

: (Filed June 22nd, 1900.)