# THE PHILADELPHIA AND BALTIMORE CENTRAL. RAILROAD CO. *vs.* CHARLES R. HOLDEN.

*Negligence—Injury at Private Railway Crossing—Driving on Track Without Stopping When View is Obstructed—Contributory Negligence—Avoiding Injury After Knowledge of Plaintiff's Peril— Failure to Give Signal at Public Railway Crossing not Negligence as to Person Injured at Private Crossing Where Signal Could Have Been Heard.*

If the railway track which a person is about to drive across on a country road is not fully within view in both directions in the immediate approach to the crossing, or the view thereof is in any manner obstructed, it is the duty of such person to stop, look and listen, before attempting to cross, and the failure to do so constitutes contributory negligence if an injury should occur while crossing.

When a person, injured while attempting to cross a railway track, was guilty of contributory negligence, and the evidence is uncontradicted that the engine-driver did not see his peril until it was too late to avoid the injury, then an instruction to the jury to the effect that if the plaintiff attempted to cross the track, at a point where the view was obstructed, without first stopping to look and listen for approaching trains, he is guilty of contributory negligence, should not be modified by adding the qualification that if the engine-man saw, or by the exercise of ordinary care could have seen, the perilous position of the plaintiff in time to avoid the injury, then the contributory negligence is not a bar to recovery of damages.

In an action to recover damages for injury at a railway crossing, where defendant concedes a prayer of the plaintiff by which it was admitted that there was evidence to go to the jury on the question of plaintiff's contributory negligence as well as evidence of defendant's negligence, then prayers offered by the defendant to the effect that there is no legally sufficient evidence of negligence on its part, and that plaintiff's contributory negligence is such as to bar his right to recover, should be refused, because, when a prayer is conceded there is also an implied concession that there is evidence legally sufficient to support its hypothesis.

The failure of a railway company to give the required signal at a public road crossing about 2,000 feet distant from a private crossing is not evidence of negligence in an action by a party to recover damages for an injury inflicted at such private crossing, where the company is under

no obligation to give a signal ; nor is such failure to blow the whistle at the public crossing admissible in evidence upon the question of plaintiff's contributory negligence at the private crossing when he drove upon the track, without stopping, at a point where the view of approaching trains was obstructed.

Appeal from the Circuit Court for Cecil County (STUMP and MARTIN, JJ.) The plaintiff's first prayer, which was conceded, was : "If the jury find that on or about the 10th day of July, 1899, the plaintiff was injured by the locomotive or cars of the defendants, while operated by its agents on its road, and that said injury resulted directly from the want of ordinary care and prudence of the agents of the defendants, and not from the want of ordinary care and prudence on the part of the plaintiff, directly contributing to the injury, then the plaintiff is entitled to recover."

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*L. Marshall Haines* and *Austin L. Crothers* for the appellant.

*Albert Constable* (with whom were *Joshua Clayton* and *Albert Constable, Jr.*, on the brief ), for the appellee.

FOWLER, J., delivered the opinion of the Court.

On the 10th July, 1899, Charles Holden was injured while crossing the track of the Philadelphia and Baltimore Central Rail Road Company. The point where the accident happened is a private crossing called Holden's Lane. Suit was brought by Holden against the Rail Road Company in the Circuit Court for Cecil County to recover damages. There was a verdict and judgment for the plaintiff for $2,500.

During the course of the trial the plaintiff offered to prove by himself and several other witnesses that the whistle was not blown at New Valley, which is a public crossing 1032 feet east of Holden's Lane. The whistling post, however, is about 2,000 feet from that point. The admission of this testimony

is the ground of the first three exceptions.    The other exception relates to the rulings upon the prayers.

It appears from the evidence that on the day when the plaintiff was injured he left his father's house on the north side of the railroad about ten o'clock in the morning to go to Rowlandville.    To reach his destination he was compelled to cross the track.    He testifies that he was driving a gray horse in a butcher wagon, the curtains of which were painted white. The horse was gentle and accustomed to the cars.    In approaching the track from the north side on Holden's Lane, the view is clear until within forty-six feet of the track.    From that point for a distance of thirty-nine feet the view is obstructed by the bank and bushes, and this condition continues until within seven feet of the track.    So that, as the plaintiff said, the view of the railroad is so obstructed at that point that it is impossible to see east, the direction from which the train approached, until the horse's feet were on the track.    As the plaintiff passed over the thirty-foot space from which he said the view was unobstructed, he listened and looked in the direction from which he was expecting the train to come, if it had not already passed, but he neither heard nor saw anything, and he therefore went on very slowly, at a speed of about a mile an hour, and drove upon the track without once stopping to listen.

A number of questions were discussed, but we think it necessary to consider only the two controlling ones of contributory negligence on the part of the plaintiff, and the question presented by the first three exceptions.

In the first place we may remark that by conceding the plaintiff's first prayer the defendants admitted that there was evidence to go to the jury on the question of contributory negligence of the plaintiff, as well as of the negligence of the defendant, and therefore there was no error in rejecting the defendant's first and second prayers, the first of which asked the Court to take the case from the jury because there was no legally sufficient evidence of defendant's negligence; and the second of which asked the Court to instruct the jury that

the plaintiff was not entitled to recover, because his own negligence directly contributed to his injury.   In other words having by their concession of the plaintiff's first prayer, which then became the law of the case, admitted that there was a state of case presented proper for the consideration of the jury, it cannot be allowed to ignore the conceded prayer, and ask to have the case withdrawn from them.   It was so held in the recent case of the *B., C. & A. Ry. Co.* v. *Kirby*, 91 Md. 316. McSherry, C. J., there said : " In conceding a prayer there is involved, of necessity, a concession that there is sufficient evidence to support the hypothesis of the prayer." It is clear, therefore, we think that there was no error in rejecting the defendant's first and second prayers.   But it was also contended that for the same reason, if for no other, there was no error in rejecting the defendant's sixth prayer.   By this prayer the Court was asked to instruct the injury that if they find that the plaintiff approached the track in the manner testified to, and that his view on his near approach to it was in *any manner obstructed*, that then it was the duty of the plaintiff before going on the track to stop, look and listen for the train, and that if he violated this rule by failing to stop, he was guilty of contributory negligence, and cannot recover.

The plaintiff's first contention is that the language of this prayer is too broad, but we cannot agree with him.   We think it clearly announces the established rule, which we said in *Hogeland's case*, 66 Md. 149 *"is one which the Courts ought not to relax*, as its enforcement is necessary as well for the safety of those who travel in railroad trains as for those who travel on the common highways."   In the case just cited the rule is thus expressed, "if the track in *both directions* is not *fully in view* in the immediate approach to the point of intersection of the roads, due care would require that the party wishing to cross the railroad track, should stop, look and listen before attempting to cross."   *Good's case,* 75 Md. 537; *Price's case,* 87 Md. 188; *Watson's case,* 91 Md. 344.   The prayer we are considering declares that if the view was in *any manner* obstructed, it was the duty of the plaintiff to stop, &c.

This is equivalent to saying that if the track was not "fully in view," that is to say if there is an obstruction of the view by a hill, a bank, trees or *in any manner*, due care requires the traveller on the common highway to stop and listen before attempting to cross.

It was also suggested by the plaintiff that if this prayer was correct in other respects it was error to have granted it without adding the qualification that if the engineman saw or by the exercise of due care and diligence could have seen the dangerous position of the plaintiff in time to avoid the injury, the plaintiff was not to be prevented by his own negligence from recovering. But there is no evidence in the case that would justify such modification. The evidence and the only evidence as to when and the circumstances under which the plaintiff was seen by the trainmen, is given by the engineer and brakeman. The former testified that when the engine was about six hundred feet from the crossing, he saw the plaintiff on the lane about fifty feet from the track driving very slowly towards the railroad. He was perfectly safe where he was, and the witness naturally and properly thought he would stop, *Harty* v. *R. R.*, 42 N. Y. 468; *B. & O.* v. *Savington*, 71 Md. 590; *M. C. R. R.* v. *Neubur*, 62 Md. 391, but in the language of the witness "he jumped right on the railroad." It was then for the first time that the plaintiff was in a perilous position and it was then confessedly too late to rescue him. The brakeman did not see the plaintiff until just as he was struck.

But although we are of opinion the prayer is in itself unobjectionable, we think it was properly rejected for the same reason that the first and second of the defendant were rejected, that is to say, because the concession of plaintiff's first prayer necessarily conceded the hypothesis on which that prayer was based and estops the defendant from complaining of the rejection of its sixth prayer. The theory of the first prayer is that although the plaintiff testified to the fact that he did not stop, and although the fact that he did not stop was an admitted fact in the case, yet under all the evidence in the case it was proper for the jury to infer that the plaintiff was not guilty of such

contributory negligence as would prevent recovery. But the
sixth prayer on the contrary asks the jury to be told that if
they believe that same fact—namely, that the plaintiff did not
stop, then they have no discretion and their verdict must be
for defendant. It follows that the first prayer of the plaintiff
which thus became the law of the case, should not have been
granted, and the case given to the jury, if there is an admitted
fact which demonstrates the contributory negligence of the
plaintiff. The language of the sixth prayer leaving it to the
jury to find whether the plaintiff stopped, should not be al-
lowed to change the situation, for it was equivalent to saying
to the jury, "If you find the plaintiff did not stop (and this
you are bound to do, because it is a conceded fact in the case)
then you must find for defendant." Such a prayer is in con-
flict with the plaintiff's first, which as we have seen leaves it to
the jury to find from all the evidence in the case—the con-
ceded fact included—whether the defendant was guilty of con-
tributory negligence or not. By the first the jury are told
that you may consider the whole case and decide the two
questions at issue—negligence *vel non* of the defendant and
contributory negligence *vel non* of the plaintiff. By the sixth
they are, under the facts in this case, practically told. "It is
an admitted fact in this case that the plaintiff did not stop, and
therefore whether the defendant was guilty of negligence is
immaterial, your verdict must be for the defendant, and you
have no discretion in the matter." In our opinion a clear con-
flict is thus presented and hence the sixth prayer of the defend-
ant was properly refused because in conflict with the conceded
prayer.

We will proceed to consider the questions presented by the
first three exceptions, which, as we have said, are whether
the failure to give the required signal at a public crossing which
may be heard at a private crossing near by negligence as
to those who use and have a right to use such private cross-
ing ; and, secondly, if such failure to give the signal at public
crossing is not evidence of negligence of the defendant upon
which the plaintiff in this case can recover, is it not admissible

upon the question of the plaintiff's contributory negligence? Briefly in regard to these two propositions in the order in which they are stated.

Upon the first there is considerable conflict of authority. The case of *Sanborn* v. *Deposit Rail Road Co.*, 91 Mich. 538, is cited in 3 *Elliott on Railroads*, p. 1733, for the proposition that where a private crossing is located so near a public crossing that signals given thereat can be distinctly heard at the private crossing the persons using the private crossing are entitled to the benefit of the signals required at the public crossing and that if the company fails to give such signals it will be guilty of negligence. But the learned authors remark "this, however, seems to us questionable." In 8 *Am. & Eng. Ency.*, 2 ed. 414, title Private Crossings, a number or authorities are collected showing considerable divergence of views in regard to the failure to give signals required by statute. But the question here presented, namely, whether the failure to blow whistle at *public station* about 2000 feet from the private crossing where the accident happened, is evidence of negligence of the defendant at the latter as respects one crossing at the private or farm crossing, has not often arisen. It was directly presented in *Cahill* v. *R. R. Co.*, 49 Am. & Eng. R. R. Cases 390; s. c., 92 Ky. 347, where the question was answered in the affirmative. But in *C. R. I. & P. R. Ry. Co.* v. *Eininger*, 114 Ill. 79, it was held that flagman are for the protection of those crossing at a public crossing. And so also it appears that the injury sued for in *Ransom* v. *Railway*, 62 Wis. 178, was inflicted at a point where a public highway crossed the railroad. To the same effect is *Norton* v. *Rail Road*, 113 Mass. 366, and *Wakefield* v. *R. R. Co.*, 37 Ver. 330. In *Harty* v. *R. R. of N. J.*, 42 N. Y. 468, it appears that the railroad company was required by statute to ring bells, &c., at public crossings, and it was held that no duty was imposed as to persons not at public crossing, though lawfully on the track at another point. In *Vandewater* v. *N. Y. & N. E. R. R. Co.*, 135 N. Y. 588, this question was presented, but not decided. PECKHAM, J., said: "It may be that evidence of the omission

to give any signals for the highway *would not* be admissible as
bearing upon the question of defendant's negligence in running
its trains at the farm crossing 2,000 feet away." It seems to
us, however, that upon principle, one, who like the plaintiff
was at a private crossing nearly half a mile distant from the
place where the signal was required to be given for the public
crossing should not be allowed to complain, under the circum-
stances of this case, of a failure to give the signal for the latter.
Undoubtedly the regulation was made for those at the public
crossing, and to extend it to private crossings would practi-
cally nullify the long line of decisions in this State to the effect
that no signals are required at the latter. For, if the conten-
tion of the plaintiff be sustained, if the defendant fails to give
the signal at a public crossing a double duty is violated, namely,
a duty to those about to cross or crossing at a public crossing,
and a duty to those in the same situation at a private crossing,
whereas we have always held hitherto that a railroad company
owes no such duty to the latter. The result would be that
the defendant would be held to the same degree of care and
the same liability would be imposed when there is a duty to
give the signal, as in cases where no such duty exists. A view
leading to such a conclusion cannot be adopted.

Finally was the evidence showing failure to give the signal
admissible as reflecting upon the question of plaintiff's con-
tributory negligence?

Without discussing the general question as to whether under
*any circumstances* the testimony which was here admitted is
properly admissible as reflecting upon the contributory negli-
gence, we have no hesitation in saying that under the proof
in this case it should not have been admitted for that or any
other purpose. It is shown that the whistling-post—the point
at which the signal was required to be given, is distant nearly
2,000 feet from the point of the accident. For a distance of
45 or 50 feet before reaching the railroad, the track was hid-
den from the view of the traveller. The plaintiff was per-
fectly familiar with the crossing and knew or should have
known the regular hours for the running of the trains. We

think, therefore, the evidence presents such a clear case of contributory negligence that the mere fact of the failure of the defendant to give the signal nearly half a mile away should not be admitted.   Whatever the rule may be elsewhere as to the degree of care required by travellers, we are of opinion that the circumstances of this case demand a strict application of the rule which requires the traveller to stop and listen before attempting to cross the tracks of a railroad.   If we say that it may be conceded, as it must be, that while railroad companies are bound to give signals at public crossings, no such duty is imposed upon them at private crossings, and at the same time declare that if they fail to give the signal at the former and an accident happens at the latter, evidence of such failure is admissible for the purpose of excusing or extenuating the admitted gross contributory negligence of the plaintiff, we thereby practically nullify the latter part of the rule relating to private crossings, and impose upon the railroads the same degree of care, and require the same signals to be given whether the crossing be public or private, whenever the latter is in such close proximity to the former that the signal given for the former may be heard at the latter.   In a word, we must either reverse our former decisions declaring that signals need not be given at private crossings and require *all* crossings to be put on the same footing, or we must adhere to the established rule that signals are required only at public crossings.   But, if we assume that the plaintiff had been injured at a public crossing, there can be no doubt that the failure to give the signal would not have been admissible to excuse him, that is, to show he was not guilty of contributory negligence.   We have said, and we repeat, that the evidence of the plaintiff himself shows that this is a clear case of contributory negligence, and hence the failure of the defendant to ring the bell at the public crossing is no excuse for the plaintiff's conceded contributory negligence in failing to stop before driving upon the track.   "In such cases, the carelessness in not whistling should not be connected with the injury" to the plaintiff.  *Bacon's case,* 58 Md. 482.   If, therefore, the

failure to blow the whistle is no excuse for the rash and foolish conduct of the plaintiff and has no connection with it, we do not understand upon what theory such failure to blow the whistle should be admitted as reflecting upon the question of plaintiff's contributory negligence.

In the case of the *L. N. A. & Chicago R. R.* v. *Stommel,* 126 Ind. 41, this question was directly presented. By the ninth instruction the defendant requested the Court to inform the jury that the failure of the employes of the railroad company to sound the whistle and ring the bell did not enter into the question of contributory negligence. The trial Court refused this instruction, and on appeal it was *held*, C. J. Berkshire delivering the opinion of the Court, that the instruction requested should have been granted. "The question of contributory negligence 'he continues,' did not depend upon what the appellant's (the R. R. Co.) employees did or did not do, but upon what the plaintiff's servants did in the light of the *res gestæ.*" "We are at a loss" he says, "to understand what difference it could make as to the caution to be used by the plaintiff, whether there was or was not a statute requiring the giving of signals. It was *his duty to stop and look for* an approaching train, if there was any point within a reasonable distance from the crossing from which he could observe a train approaching, and *if no train was to be seen, it was his duty* when nearing the crossing to stop and listen for the sound which ordinarily follows a moving train."

The question as to the effect of failing to give the customary signal by ringing the bell at Holden's crossing is not before us, for evidence was admitted without objection upon this point.

For the error indicated in admitting the testimony objected to the judgment will be reversed.

*Judgment reversed with costs to appellant and new trial awarded.*

(Decided June 12th, 1901.)