(Decided 18th November, 1886.)

THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD COMPANY *vs.* HANNAH M. HOGELAND.

*Railroad trains—Crossings of Public ways—Proper signals— Negligence—Sufficiency of Evidence to Require case to be Submitted to the Jury—Question for Jury—Contributory negligence of the Driver of a Vehicle—Passenger.*

Railroad trains have the precedence of passing the crossings of public ways unobstructed; but it is the duty of those directing the trains to be careful to give all proper and sufficient signals of their approach, and to take all reasonable precautions in view of the nature of the crossings, to avoid collision. And it is equally the duty of those approaching the crossings as travellers on the highways, to approach with care.

It is negligence *per se* for any person to attempt to cross the tracks of a railroad without first looking and listening for approaching trains; and if a party neglect this necessary precaution and receives injury by collision with a passing train, which might have been seen if he had looked, or heard if he had listened, he will be presumed to have contributed by his own negligence to the occurrence of the accident; and unless such presumption be repelled, he will not be entitled to recover for any injury he may have sustained.

Evidence of the failure of the railroad company to give the regular signals of the approach of its train to a public crossing, and of the blowing of the whistle on the crossing just immediately before the collision with the vehicle in which the plaintiff was riding,

Phila., Wilm. & Balto. R. R. Co. *vs.* Hogeland.

which frightened the horse and caused the accident, is sufficient to require the case to be submitted to the jury.

The question of the want of care, or of the existence of contributory negligence on the part of the plaintiff, such as would defeat her right to recover, is one of fact for the jury under proper instruction from the Court.

The contributory negligence of a driver of a public or private vehicle, not owned or controlled by the passenger, and who is himself without fault, will not constitute a bar to the right of the passenger to recover against a railroad company for injuries received by a collision of its train with the vehicle.

APPEAL from the Circuit Court for Kent County.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff offered the following prayers:

1. If the jury find that on or about the thirteenth day of August, 1884, the plaintiff was injured by the locomotive or cars of the defendant, while operated by its agents. on its road, and that said injury resulted directly from the want of ordinary care and prudence of the agents of the defendant, and not from the want of ordinary care and prudence on the part of the plaintiff, directly contributing to the injury, then the plaintiff is entitled to recover.

[Prayer 2 not in the record, having been lost.]

3. Notwithstanding the jury may find that the plaintiff was guilty of negligence, and that such negligence contributed to the injury of which she complains, yet still if the agents of the defendant were aware of such negligence in time, by the use of ordinary care and prudence, to have avoided the effect of such negligence on her part, but did not do so, then such negligence on her part is not such contributory negligence as to constitute a defence to this action.

4. If the jury believe that the plaintiff was injured by the negligence of the defendant, as stated in the declara-

tion, then it is no defence to this action that the carriage in which she was riding was driven negligently, and that such negligence contributed to the injury complained of; provided the jury believe that the conveyance in which she was riding was driven by a certain Joseph Richardson, who had hired the same for his own use, and upon his own responsibility, and that the plaintiff was merely a passenger occupying a seat in said conveyance by his invitation, and that she exercised no control over said Richardson, and interfered in no manner whatever with his management of said conveyance.

5. In order to defeat a recovery in this suit, on the ground of contributory negligence upon the part of the plaintiff, the burden of proof is upon the defendant to show that the plaintiff was guilty of negligence, and that such negligence on her part directly contributed to produce the injury.

6. If the jury shall find a verdict for the plaintiff, then in estimating the damages they are to consider her health and condition before the injury complained of, as compared with her present condition in consequence of said injury, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable her from engaging in those employments for which, in the absense of such injury, she would have been qualified, and also the physical and mental suffering, if any, to which she was subjected by reason of said injury, and to allow her such damages as in the opinion of the jury will be a fair and just compensation for the injury which she has sustained.

The defendant offered ten prayers as follows:

1. If the jury shall believe from the evidence that plaintiff lived about three miles from the place where the accident occurred, and within thirty or forty yards from the railroad of defendant, and in full view thereof; that she had driven with the witness, Richardson, from her home to Elkton, and over the crossing where the injury com-

plained of occurred, a short time before the date of said injury, and that the road from the home of plaintiff to the place of the accident, was for two-thirds of its distance nearly parallel with and in full view of the railroad of defendant, and that while riding from her home to the place of the accident, on the day when the injury complained of occurred, a train of cars on the railroad of said defendant passed in full view of said plaintiff; and shall further believe from the evidence · that when plaintiff arrived at a point five hundred feet from the place where the said injury occurred, she could there, and all the way from there, till she reached the crossing, have an unobstructed view of the railroad track toward the south, and of any train on it, from the crossing where the said injury occurred back to the whistling-post for said crossing, a distance of fourteen hundred and seventy-eight feet, and when she reached a point in the public road, thirty feet or more from the crossing, she could have an unobstructed view of the railroad track, for a distance of one mile southward, in the direction from which the train which caused the accident was approaching, then the plaintiff·is not entitled to recover.

2. That there is no legally sufficient evidence in this case, that the injury complained of was caused by any negligence of the defendant, or of any of its servants, and therefore the verdict of the jury must be for the defendant.

3. That if the jury shall find from the evidence that the injury complained of was occasioned partly by the negligence of defendant, directly contributing thereto, and partly by the negligence of the plaintiff, directly contributing thereto in any degree, then the plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendant.

4. That the plaintiff is not entitled to recover in this case, because if she was injured by the train of defendant, plaintiff's negligence directly contributed thereto.

5. That if the jury shall find from the evidence that if the plaintiff saw or heard the train of defendant approaching, in time to avoid the accident, which produced the injury complained of, or by the exercise of ordinary care and prudence, might have seen or heard the train in time to avoid the accident mentioned, and did not stop or turn the carriage out of the way of danger, or make any effort to have the carriage stopped or turned out of the way of danger, or to warn the driver, then the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant; notwithstanding that the jury shall further find that the defendant was guilty of negligence in failing to sound the whistle at the usual place.

6. That if the jury shall find from the evidence that on the day of the injury complained of, the plaintiff and the witness Richardson both had business in the town of Elkton, and that the witness Richardson had offered to drive her ·into Elkton with him on the day in question, and plaintiff had accepted the proffered service, and that on the morning of the accident Richardson hired a horse and carriage in the town of North East, and started for Elkton, and on his way ·to· the last named place took up the plaintiff, and proceeded to drive with her to Elkton, and the injury complained of happened during the course of said drive ; and if the jury shall further find that the witness, Richardson, by his want of ordinary care and prudence, directly contributed to the happening of the injury complained of, then the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant.

7. That if the jury shall find from the evidence the facts set out in defendant's fifth prayer, then the plaintiff is not entitled to recover in this case, because if the plaintiff was injured by defendant's train, the negligence of the witness Richardson directly contributed thereto.

8. That there is no legally sufficient evidence in this case of any negligence on the part of defendant or his

servants, except as to the failure to blow the whistle at the usual place before reaching the crossing where the accident complained of happened ; and even if the jury shall find from the evidence that the defendant failed to do so, yet, if the jury shall further find from the evidence that the plaintiff by her own want of ordinary care and prudence, directly contributed to the happening of the injury complained of, then she is not entitled to recover in this case, and the verdict of the jury must be for the defendant.

9. That to entitle the plaintiff to recover in this action, the jury must believe from the evidence that the injury complained of was caused solely by the negligence of the defendant ; and if they shall find from the evidence that the plaintiff by her own negligence in any degree directly contributed to the happening of the injury complained of, then the plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendant.

10. That it was not the duty of those in charge of the defendant's train to anticipate the conduct of the plaintiff or of the party that was driving her, and because they saw the plaintiff and the driver approaching the crossing to conclude that they would attempt to cross in advance of the train, and that on the contrary those in charge of the train were, or would have been, fully justified in supposing that they would not venture to attempt to cross or to get upon the tracks until after the passage of the train ; and therefore the failure of the engineer to attempt to stop or slow his train was not negligence.

The Court substituted the following for the defendant's first prayer :

If the jury shall believe from the evidence that plaintiff lived about three miles from the place where the accident occurred, and within thirty or forty yards from the railroad of the defendant, and in full view thereof ; that she had driven with the witness, Richardson, from her

Phila., Wilm. & Balto. R. R. Co. *vs.* Hogeland.

home to Elkton, and over the crossing where the injury complained of occurred, a short time before the date of said injury, and that the road from the home of plaintiff to the place of the accident was for two-thirds of its distance nearly parallel with and in full view of the railroad of defendant, and that while riding from her home to the place of the accident on the day when the injury complained of occurred, a train of cars on the railroad of said defendant passed in full view of said plaintiff; and shall further believe from the evidence that when plaintiff arrived at a point five hundred feet from the place where the said injury occurred, she could there, and all the way from there till she reached the crossing, have an unobstructed view of the railroad track toward the south, or a train approaching thereon from the south, and of any train on it from the crossing where the said injury occurred, back to the whistling post for said crossing, a distance of fourteen hundred and seventy-eight feet, and when she reached a point in the public road, thirty feet or more from the crossing, she could have an unobstructed view of the railroad track for a distance of one mile southward in the direction from which the train which caused the accident was approaching; and shall further believe that the witness, Richardson, without objection on the part of the plaintiff, attempted to drive over the railroad track or to drive near the track, in consequence of which the horse became frightened by the approaching train and unruly, and turned or backed the carriage in a position to be struck by the train as it passed ; and shall further believe that the agents of the defendant, who had charge of the train, discovered the dangerous situation of the plaintiff, but could not, after discovering the danger, by the exercise of reasonable care and diligence, have avoided the accident, then the plaintiff is not entitled to recover.

The following is the Court's substitute for the defendant's third prayer :

That if the jury shall find from the evidence that the injury complained of was occasioned partly by the negligence of defendant directly contributing thereto, and partly by the negligence of the plaintiff directly contributing thereto in any degree, and that the defendant, after becoming aware of the plaintiff's negligence, could not, by the exercise of ordinary and reasonable care, have prevented the accident, then the plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendant.

The Court's substitute for the defendant's sixth prayer is as follows:

That if the jury shall find from the evidence that on the day of the injury complained of, the plaintiff and the witness, Richardson, both had business in the town of Elkton, and that the witness, Richardson, had offered to drive her into Elkton with him on the day in question, and plaintiff had accepted the proffered service, and that on the morning of the accident Richardson hired a horse and carriage in the town of North East, and started for Elkton, and on his way to the last named place took up the plaintiff and proceeded to drive with her to Elkton, and the injury complained of happened during the course of said drive; and if the jury shall further find that the witness, Richardson, by his want of ordinary care and prudence, contributed to the happening of the injury complained of, and that the defendant's servants in charge of the train, after becoming aware of Richardson's negligence and discovering the dangerous situation of the plaintiff, could not, by the exercise of reasonable care and diligence, have avoided the accident, then the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant.

The Court (WICKES and STUMP, J.,) granted the plaintiff's first, third, fifth and sixth prayers and rejected her second and fourth prayers, and rejected all the prayers of the de-

fendant as offered, but granted its first, third and sixth
prayers with a modification.

The defendant specially excepted to the plaintiff's first,
second and third prayers, on the ground that there was
no legally sufficient evidence to sustain them. The
defendant also specially excepted to the modification of its
first, third and sixth prayers by the Court, on the ground
that there was no legally sufficient evidence to sustain
such modification. The defendant excepted to the granting
of the plaintiff's first, third, fifth and sixth prayers, and
to the rejection of its prayers, as also to the granting of its
first, third and sixth prayers with a modification.

The jury gave a verdict for the plaintiff for $5833.34.
Judgment was entered accordingly. The defendant
appealed.

The cause was argued before, ALVEY, C. J., YELLOTT,
MILLER, IRVING, and BRYAN, J.

*John J. Donaldson,* and *William J. Jones,* for the
appellant.

*Albert Constable,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This is an action brought by the appellee, the plaintiff
below, against the appellant, the defendant, to recover for
injuries received in consequence of the alleged negligence
of the defendant in the management of its railroad train.
The injury was received at a crossing of a country highway,
and while the plaintiff was being conveyed over the rail-
road tracks, at such crossing, by a collision of the defendant's
train with the vehicle in which the plaintiff was riding.

It appears that, on the morning of the 13th of August,
1884, the plaintiff, by invitation of her brother-in-law,
Joseph Richardson, left her home in a small one horse

158 MARYLAND REPORTS.

Phila., Wilm. & Balto. R. R. Co. *vs.* Hogeland.

covered wagon or carriage, for the purpose of going to the town of Elkton; and which horse and vehicle had been hired by Richardson, and were under his exclusive control and direction, the plaintiff being a mere passenger by invitation, Richardson himself being the driver. They proceeded on their way, and for a part of the distance between the house of the plaintiff and the crossing at which the accident occurred, known as the Red Mill crossing, the railroad, running in the same general direction of the highway, could be seen, but at other parts it could not; and in nearing the crossing, according to the testimony of Richardson, who testified as a witness for the plaintiff, he kept a careful look out for approaching trains, but saw none, nor did he hear the sound of any whistle or bell; but just in the act of his crossing the tracks of the railroad, a train reached the crossing from the direction of Baltimore, and the result was a collision, and the infliction upon the plaintiff a severe and most distressing injury.

As by the prayers in the case, the legal sufficiency of the evidence, on the part of the plaintiff, to entitle her to have the case submitted to the jury, was made a question to the Court, it may be well to state that portion of Richardson's testimony which describes the accident, and the manner of its occurrence, in the terms in which it is set out in the bill of exception. That witness testified " that plaintiff rode on the left side and the witness on the right side of the carriage, on the same seat; that the curtain behind was up, and also the two front side curtains, but the two back side curtains were down; that the witness was driving and passed along the public county road in a direction nearly parallel to defendant's railroad, until they reached Cameron's house, near the Red Mill crossing; that the railroad, which is distant several hundred yards from the county road, was obscured in many places by bushes, and trees, and cuts. Coming up from the mill by Cameron's house witness was looking out

for a ballast train that he knew had been the day before
working on the railroad; that at Cameron's yard, a point
about four or five hundred feet from the Red Mill crossing,
witness stopped the carriage and looked out behind, to see
if he could see or hear a train, but saw or heard nothing;
that further on he looked out again from the back of the
carriage, but saw or heard no train; that further on still
he looked out when going up the grade to the crossing,
but saw or heard nothing of the train. That when on the
south bound track he heard the rumbling of car wheels;
looked and saw the train upon him; that he drew the
horse around facing towards Elkton, in what is called the
six foot way between the tracks, and the horse moving
forward, drew the carriage in a line parallel with the
north bound track. That as the engine passed, it sounded
the whistle, which frightened the horse, which was restless
and excited, so that he turned at right angles with the
track, and the carriage was immediately struck, and
plaintiff and witness were thrown through the air; that it
was all done in an instant. That if the engine had not
whistled and frightened the horse, no accident would
have occurred, as the horse, though nervous and excited,
was under control. That he looked out four times for the
train before reaching the crossing; the first time was on
the hill near Cameron's yards; then he stopped the horse
and took a good look, but saw nothing; that he had a
good view for some distance from the hill, and the train
was not in sight, or he could or would have seen it; that
he looked out when he was about twenty feet from the
track; and that he heard no whistle before the train
reached the crossing."

He also testified, that the plaintiff "had nothing to do
with the carriage, the hiring of it, or in any way." And
on cross-examination, he testified, that the plaintiff " did
not call his attention to the train, nor did he see her look,
and heard no alarm from her. Does not know whether

she could have seen a train or not; knows that he could not; and could not say whether she leaned out of the carriage or not; she may have looked out behind or out of the front; witness could not say what she did." Other witnesses testified, who were within hearing and seeing distance of the crossing at the time of the accident, that neither whistle nor bell was heard from the train as it approached the crossing, but the whistle was sounded at the crossing about the moment of the accident. The train was running at a speed of from 40 to 45 miles per hour.

On the part of the defendant, testimony was given that the plaintiff and the driver of the carriage could and ought to have seen the approach of the train, for some distance before reaching the crossing, and in time to have avoided all danger of a collision. Proof was also given by the defendant that the whistle was sounded, and the bell was rung, as signals of the approach of the train to the crossing; but the speed of the train was not slacked before reaching the crossing, though the carriage on the road was seen approaching by at least one of the hands on the train.

The evidence shows that the crossing was one of more than ordinary danger, and therefore required the exercise of more than ordinary care, both on the part of parties attempting to cross the tracks of the railroad, and of the managers of the passing trains. This duty is mutual and reciprocal, and not confined to one party only. The railroad trains, from the nature of things, have the precedence of passing the crossings of public ways unobstructed; but it is the duty of those directing the trains to be careful to give all proper and sufficient signals of their approach, and to take all reasonable precaution, in view of the nature of the crossings, to avoid collision. Failure in the strict performance of these duties to the public, whereby injury is inflicted upon individuals, will subject the company to liability to respond in damages to the injured

party. But while such is the plain duty of the managers of railroad trains, it is equally the duty of those approaching the crossings as travellers on the highways, to approach with care, and the more difficult and dangerous the crossing, the greater the care required. The rule is now firmly established in this State, as it is elsewhere, that it is negligence *per se* for any person to attempt to cross tracks of a railroad without first looking and listening for approaching trains; and if the track in both directions is not fully in view in the immediate approach to the point of intersection of the roads, due care would require that the party wishing to cross the railroad track, should stop, look, and listen, before attempting to cross. Especially is this required where a party is approaching such crossing in a vehicle, the noise from which may prevent the approach of a train being heard. And if a party neglect these necessary precautions, and receives injury by collision with a passing train, which might have been seen if he had looked, or heard if he had listened, he will be presumed to have contributed, by his own negligence, to the occurrence of the accident; and unless such presumption be repelled, he will not be entitled to recover for any injury he may have sustained. This is the established rule, and it is one that the Courts ought not to relax, as its enforcement is necessary as well for the safety of those who travel in railroad trains as those who travel on the common highways. *Md. Cen. R. Co. vs. Neubeur*, 62 *Md.*, 391, 399, 400; *Balt. & Ohio R. Co. vs. Owings*, 65 *Md.*, 502.

At the trial, after all the evidence was in, the plaintiff offered six prayers for instruction to the jury, as to the law of the case, and the defendant offered ten. Of the prayers offered by the plaintiff, the first, third, fifth and sixth were granted; and all those of the defendant were rejected as offered, but the first, third and sixth of those prayers were modified by the Court, and in their modified

form were granted.   The granting of the prayers on the part of the plaintiff, and the refusal to grant the several prayers as offered by the defendant, were made the subjects of exception by the defendant.

The defendant, by one of its prayers, asked that the case be taken from the jury, upon the ground, as contended, that there was no evidence *legally* sufficient upon which a verdict could be based for the plaintiff.   But that such an instruction could not be granted, in view of the testimony we have cited, is clear and manifest.   The Court was not called upon to determine the weight of the evidence, but simply the question, whether there was evidence *legally* sufficient to entitle the plaintiff to have her case considered by the jury.

There was, at least, evidence of the failure to give the regular signals of the approach of the train to the crossing; and there was also uncontroverted evidence of the fact of the blowing of the whistle on the crossing, just immediately before the collision, and which is said, by the witness Richardson, to have frightened the horse and caused the accident.   This was clearly evidence sufficient to require the case to be submitted to the jury.   And the question of the want of care, or of the existence of contributory negligence, on the part of the plaintiff, such as would defeat her right to recover, was one of fact for the jury, under proper instruction from the Court; and that question was fairly submitted to the jury in the instructions given at the instance of the plaintiff.   Indeed, all the instructions given on the prayers of the plaintiff are but plain legal propositions that admit of no controversy in this Court, where they have been repeatedly sanctioned ; and the Court below, therefore, committed no error in granting such instructions.

But by the prayers of the defendant, rejected by the Court, especially the sixth and seventh prayers, the Court was asked to instruct the jury, that the plaintiff's right to

recover would be defeated, if they found from the evidence that the driver of the vehicle, Richardson, " by his want of ordinary care and prudence, directly *contributed* to the happening of the injury complained of," notwithstanding the negligence on the part of the defendant. Thus imputing the negligence of the driver to the plaintiff, though she was a mere passenger in the carriage by invitation, and without the slightest direction or control over either the carriage or the driver. This, we think cannot be done.

It is true, this proposition has had support by decisions of some Courts of high authority; but the great preponderance of authority is against it. The principle of imputed negligence, as applied to cases like the present, seems to have had its foundation in the case of *Thorogood vs. Bryan,* 8 *C. B.,* 115. That decision was made in 1849; and it was there held that the plaintiff, an ordinary passenger in an omnibus, injured by the joint negligence of the driver of the omnibus and of the defendant, should be taken to be *identified* with the driver of the omnibus; and because the want of care on the part of the driver of the omnibus contributed to the accident, the plaintiff could not recover against the defendant. It may be that this decision has not been expressly overruled by the English Courts; but it certainly has been severely criticised, and has been virtually repudiated by several of the English Judges. See *Tuff vs. Warman,* 5 *C. B.* (*N. S.,*) 573; 1 *Sm. Lead. Cas.* (*Ed. by Keating & Willes,*) [342] 505; *The Milan, Lush. Adm.,* 388.

In this country, while the principle of *Thorogood vs. Bryan* has been adopted in some few of the State Courts, the great majority of the State Courts where the question has arisen, have declined to recognize the principle as sound, and rejected the case as authority. Indeed, it may be stated as the general rule of the Courts in this country, with but few exceptions, that the contributory negligence

of a carrier, or of the driver of a public or private vehicle, not owned or controlled by the passenger, and who is himself without fault, will not constitute a bar to the right of the passenger to recover for injuries received. The only principle upon which such contributory negligence could bar the right of recovery is, that the driver should be regarded as the agent or servant of the passenger. But where, as in this case, the passenger has no control over the driver, and does not own the vehicle, and is without blame, and there is no ground in truth and reality for holding him to be the principal or master, there is neither reason nor justice in holding him bound by the contributory negligence of the driver.

The principle of *Thorogood vs. Bryan* has been very thoroughly discussed, upon full review of all the authorities, in *Bennett vs. N. J. R. Co.*, 36 *N. J. Law*, 225, and more recently in *N. Y. L. E. & W. R. Co. vs. Steinbrenner*, 47 *N. J. Law*, 161, by the Supreme Court and the Court of Error and Appeal of New Jersey, and the principle wholly rejected. In the last mentioned case, where a passenger by a coach, hired with the driver for a particular journey, was injured by a collision with a railroad train, caused by the concurring negligence of the company and the driver, it was held, that the negligence of the driver was not to be imputed to the passenger, and therefore formed no bar to the right to recover against the company.

In New York, by repeated decisions, the doctrine of imputed negligence, in cases like the present, has been wholly rejected. In *Robinson vs. N. Y. C. & H. R. R. Co.*, 66 *N. Y.*, 11, the plaintiff accepted an invitation to ride with a party competent to drive and control the vehicle, and in the course of the ride received an injury by a collision of the vehicle with a train of cars at the road crossing, and it was held that the plaintiff was not chargeable with the contributory negligence of the party driving the vehicle;

Phila., Wilm. & Balta. R. R. Co. *vs.* Hogeland.

---

and that, if the plaintiff was free from negligence, although the driver might have been guilty of negligence which contributed to the injury, the action could be maintained. In delivering the opinion of the Court, CHURCH, Ch. J., said : " I am unable to find any legal principle upon which to impute to the plaintiff the negligence of the driver. * * * The acceptance of an invitation to ride creates no more responsibility for the acts of the driver than the riding in a stage-coach, or even in a train of cars, providing there was no negligence on account of the character or condition of the driver, or the safety of the vehicle, or otherwise. It is no excuse for the negligence of the defendant that another's negligence contributed to the injury, for whose acts the plaintiff was not responsible." And so in the more recent case, in the same Court, of *Dyer vs. Erie R. Co.*, 71 *N. Y.*, 223, where the plaintiff travelled in a vehicle over which he had no control, but at the invitation of the owner and driver, it was held, that no relationship of principal and agent or of master and servant arose between them : and although he so travelled voluntarily and gratuitously, he was not responsible for the negligence of the driver, he himself being without fault, and therefore contributory negligence, on the part of the owner and driver of the vehicle, could not be relied on to defeat the plaintiff's action against the railroad company, for injuries received by a collision at a crossing.

In the Supreme Court of Ohio the same doctrine is maintained. In the recent case of *St. Clair Str. R. Co. vs. Eadie*, 43 *Ohio St.*, 91, the question is fully discussed, and the principle of *Thorogood vs. Bryan* rejected. That was a case of a party riding in a private conveyance, over which she had no control, and who was injured in a collision produced by the concurrent or joint negligence of the driver of the private carriage and a driver of a street car, and the plaintiff was allowed to recover. So in the Supreme Court of Illinois, *Thorogood vs. Bryan* has been

unqualifiedly rejected, as not being consistent with correct principle. *Wabash, St. L. and P. R. Co., vs. Shacklet,* 105 *Ill.,* 364. And similar decisions have been made in other State Courts, as will appear by the citations in the cases to which we have specially referred.

The last case to which we shall refer is that of *Little vs. Hackett,* 116 *U. S.,* 366, one of the most recent cases upon the subject, and in which the Supreme Court of the United States, in an able and exhaustive opinion by Mr. Justice FIELD, has shown that the case of *Thorogood vs. Bryan* is not sound, and therefore ought not to be followed as an authority. In that case, the Supreme Court held, that a person who hired a public hack and gave the driver directions as to the place to which he wished to be carried, but exercised no other control over the conduct of the driver, was not responsible for the acts or negligence of such driver, nor was he prevented from recovering against a railroad company for injuries suffered from a collision of its train with the hack, caused by the negligence of both the managers of the train and of the driver. Most of the cases in the State Courts to which we have referred, are referred to and relied on by the Supreme Court, in the opinion by Mr. Justice FIELD.

Upon the whole case, this Court is of opinion that the Court below committed no error in rejecting the prayers of the defendant as they were offered. And it would seem that by the first, third and sixth prayers of the defendant, as those prayers were modified and granted by the Court, while they covered the whole case, the jury were instructed in terms more favorable to the defendant than it had any right to insist upon.

The judgment will be affirmed.

*Judgment affirmed.*

(Decided 10th December, 1886.)