MARY A. NAILOR, widow of DAVID B. NAILOR, deceased, *vs.* MARYLAND, DELAWARE and VIRGINIA RAILWAY COMPANY, a corporation of the State of Delaware.

1.  RAILROADS—INJURIES ON TRACK—CONTRIBUTORY NEGLIGENCE.

Where the negligence of a party killed while crossing a railroad track was the proximate cause of his death, his widow is not entitled to recover of the road, no matter how negligent it may have been.

2.  APPEAL AND ERROR—PRESUMPTION FAVORING JUDGMENT BELOW.

In determining, on appeal from judgment for plaintiff, whether decedent, killed by a railroad, was negligent, that testimony must be accepted as true which is most favorable to plaintiff.

3.  RAILROADS—INJURIES AT CROSSING—CONTRIBUTORY NEGLIGENCE— QUESTION FOR JURY.

In an action against a railroad for the death of a party killed when the automobile he drove ran into a train at a crossing, whether the deceased could or could not have seen the train in time to avoid the accident was a question for the jury.

4.  RAILROADS—INJURIES AT CROSSING—CONTRIBUTORY NEGLIGENCE— QUESTION FOR JURY.

In such action whether, by the exercise of proper care, decedent could have heard the train had he listened was a question for the jury.

10

5. RAILROADS—INJURIES AT CROSSING—PROXIMATE CAUSE—QUESTION FOR JURY.

Whether decedent's running his automobile at ten miles an hour was negligence contributing proximately to cause his death was for the jury.

6. RAILROADS—INJURIES ON TRACK—CONTRIBUTORY NEGLIGENCE—SUDDEN PERIL.

Where a highway traveler, without fault on his part, is suddenly placed in a position of imminent peril at a railroad crossing, the law will not hold him negligent if he does not select the wisest course or do the safest thing; all that is required of him being that he act with due care under the circumstances.

7. RAILROADS—INJURIES ON TRACK—CONTRIBUTORY NEGLIGENCE—SUDDEN PERIL—QUESTION FOR JURY.

In an action against a railroad for injuries at a crossing, whether the party injured was suddenly placed in a position of imminent peril, so that he was not negligent if he did not do the safest thing, and whether he acted with due care under the circumstances, was for the jury.

8. RAILROADS—INJURIES ON TRACK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Whether decedent, exercising due care under the circumstances, could have stopped his car in time to avoid an accident *held* for the jury.

9. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Only in clear cases, where the facts are undisputed and but one reasonable inference can be drawn from them, can the courts declare a party guilty of contributory negligence as a matter of law.

(*February* 17, 1915.)

Judges CONRAD, RICE and HEISEL sitting.

*Caleb E. Burchenal* and *Daniel J. Layton, Jr.*, for plaintiff.

*Charles S. Richards* and *Charles W. Cullen* for defendant.

Superior Court, Sussex County, February Term, 1915.

ACTION ON THE CASE, No. 34, February Term, 1914.

Action by Mary A. Nailor, widow, against the Maryland, Delaware and Virginia Railway Company for the death and loss of her husband. When the plaintiff rested, counsel for defendant moved for nonsuit on the ground of contributory negligence on the part of the deceased, claimed to have been shown by plaintiff's testimony. Motion refused. Verdict for plaintiff. Defendant brings error. Affirmed.

The facts are stated in the charge to the jury of RICE, J., in the Superior Court:

This action was brought by Mary A. Nailor, widow, against the Maryland, Delaware & Virginia Railway Company, the defendant, to recover damages for the death of her husband, David B. Nailor, occasioned by the collision of an automobile operated by the said David B. Nailor, and a locomotive and train of cars operated by the defendant company. The plaintiff alleges that the defendant so carelessly and negligently ran its train at a place in Broadkiln Hundred, this county, where its tracks cross the public road at Lofland's Brickyard, that the train and the automobile in which the husband was riding, collided.

The plaintiff claims that on Sunday, July twentieth, about half-past six in the evening, David B. Nailor was running his automobile along the public highway in a northerly direction, and as the automobile approached the railroad crossing at Lofland's Brickyard it was impossible for him to see defendant's locomotive and train of cars approaching the crossing from the east, by reason of a high bank and field of corn on the easterly side of the highway, which bank and field of corn obstructed the view of travelers on the highway, up to a point a few feet distant from the railroad tracks; that the defendant company did not give due and timely notice or warning of the approach of its train to the crossing and by reason of the defendant's negligence in this respect, the automobile and train collided, and as a result of the collision, David B. Nailor was killed.

The plaintiff also claims that, at the time of the collision, David B. Nailor was exercising proper care and caution in looking for the railroad crossing and in all other respects.

The defendant company denies that the collision was caused by any negligence or want of care on the part of its servants. The defendant claims that at the time and place of the accident its train was run in a careful and prudent manner and that reasonable and lawful notice or warning of the approach of its train to the crossing in question was given to travelers on the highway. The defendant further claims that David B. Nailor proceeded along the highway and approached the crossing in a careless manner without making reasonable use of his senses of sight and hearing to ascertain the presence of an approaching train.

In an action of this kind it is necessary that the plaintiff should both allege and prove defendant's negligence, and the plaintiff cannot recover until she has shown to your satisfaction, by a preponderance of proof, that is, the greater weight of evidence, that the negligence of the defendant was the cause of the death of David B. Nailor. The burden of proving negligence on the part of the defendant rests upon the plaintiff.

Negligence has been defined as the failure to use such care, prudence and vigilance as a reasonably prudent person, under the peculiar circumstances of the case, would exercise to preserve himself from being injured. There is no presumption of negligence, either on the part of the deceased or on the part of the defendant, from the mere fact that there was a collision of the train and the automobile.

Whether there was any negligence, at the time of the collision, and whose, you must determine from all the facts and circumstances of this case as disclosed to you by the testimony of the witnesses.

If it shall appear to your satisfaction that David B. Nailor was negligent, and said negligence contributed in any degree to or entered into the accident, he was guilty of contributory negligence, and even though the defendant company may have been negligent on its part, yet if the negligence of the deceased contributed to or entered into the accident at the time of the

collision; that is, if the negligence of David B. Nailor and the negligence of the servants of the defendant in charge of the train were operating at the time of the accident, entered into and produced it, the plaintiff in this action cannot recover. For where there is mutual negligence, and the negligence of each is operative at the time of the accident, no action can be sustained therefor.

The plaintiff, however, would be entitled to recover notwithstanding there had been some negligence on the part of the deceased, if it was the negligence of the defendant alone that was the proximate or immediate cause of the accident. A person will not be held guilty of contributory negligence who, in the effort to avoid immediate danger, in the exigency of the moment, suddenly and without time or opportunity for reflection, puts himself in the way of other perils without fault on his part, and particularly so if the defendant has placed him in such position. It is an established rule of law that when one is required to act suddenly and in the face of imminent danger, he is not required to exercise the same degree of care as if he had time for deliberation. The question under such circumstances is not whether the person acted in that way which in the light of after events appeared to be the one most likely to have avoided the danger, but is whether he acted as a person of ordinary prudence and discretion would have acted under like conditions.

In determining whether the deceased was at the time of the accident exercising reasonable care and caution you may consider the ease or difficulty of seeing an approaching train, any warning or notice that may have been given, or the want or absence of any warning or notice of the approaching engine and car, and any and all other facts, circumstances and conditions shown by the evidence to have been existing at the time of the accident bearing upon the point.

The burden of establishing contributory negligence on the part of the deceased, in an action like the present one, when it is relied upon as a defense, rests upon the defendant.

If the operator of an automobile along a public highway knew or had reason to know that the highway crossed a railroad in the immediate vicinity, without knowing the location of the crossing of the public road and the railroad, he must proceed on his way at a reasonable rate of speed and in a reasonably careful manner, making use of his senses to ascertain the location of the crossing.

If under such circumstances he does not proceed along the road as a reasonably prudent man would have done under all the circumstances and a collision occurs between the automobile and a passing train, he would be guilty of contributory negligence.

If a traveler knew or by the reasonable use of his senses might have known of the presence of a railroad crossing, drive up to and upon the same, not only without at least looking, but without listening to ascertain if any cars are approaching, and a collision and injury or death occurs to him from a passing train, which would have been prevented had the traveler exercised the proper and ordinary prudence, care and caution mentioned, such traveler would be guilty of contributory negligence, and recovery could not be had from the railroad company for such injury or death. When the view at the crossing is obstructed, greater care is necessary than in places where the view is unobstructed. It is likewise the duty of the defendant, in the movement of its trains over its tracks across a public highway, to exercise reasonable care and diligence to warn travelers upon such highway of the approach of its trains in order to prevent accidents at such crossings, and if there are

obstructions in and about such crossings which prevent a train of cars from being seen as a traveler upon the highway approaches the crossing, the degree of care required is measured according to the liability of danger at such crossing.

The law regards a railroad crossing as a place of danger. If a person knew or should have known of the presence of such a crossing, its very presence is notice to the person approaching or attempting to cross it, of the danger of colliding with a passing train. And because of the danger, there is imposed upon such person the duty of reasonable care and caution, and the reasonable and ordinary use and exercise of his senses of sight and hearing for his own and others' safety and protection, and if he fails to do these things, whatever danger he could thereby have discovered and avoided, he incurs the peril of, if he proceeds, and recovery cannot be had for injury or death arising from such fault.

Although the view of the railroad from the highway is obstructed, that fact does not relieve the traveler from the obligation to look and listen for an approaching train. The very fact of the existence of such obstruction, and particularly when it is known to the traveler, imposes additional care and caution upon him in approaching the track.

The company must use due care in giving timely and sufficient warning of the approach of its trains to a public crossing. Compliance with signals or warning required by the statute may not be sufficient when the surrounding conditions reasonably demand other and more effective warning. Due care in case of the company means ordinarily the timely employment of sufficient signals or warnings, giving notice of the approach of trains to public places, such as highway crossings; and in the case of individuals due care under the present circumstances means proper circumspection in looking for a crossing, and in looking or listening, or both, when practicable, for an approaching train, to avoid collision, and the greater the peril to the individual, the greater the duty of exercising care by the company, and of prudence and caution on the part of the individual. This, after all, is but common sense, the force of which must be evident to all. If the defendant failed to make use of usual and appropriate means under the circumstances, to warn the deceased at the time of the accident, such failure was negligence on its part, and if the accident occurred by reason thereof, it would be liable, provided the deceased did not by his own carelessness contribute in some degree proximately to his death.

A failure on the part of the defendant, as its train approached a crossing at a public highway, to sound two long blasts followed by two short blasts of the steam whistle on the locomotive engine, at least three hundred yards from the crossing, as required by the act of the Assembly, would constitute negligence on the part of the company *per se*, but such failure on the part of the defendant would not relieve the traveler on the highway from the exercise of reasonable and ordinary care in approaching the crossing, if the presence of the crossing was known or under all the circumstances, should have been known to him; nor would the defendant be liable by reason of such failure if the injuries complained of were caused by the negligence or careless conduct of the deceased at the time of the accident. But if the defendant failed to make use of the warning required by the statute at the time of the accident, and if the accident occurred by reason of such failure, then and in that event the defendant would be liable for the death of David B. Nailor, if he did not by his own negligence or want of care contribute in some degree thereto.

If you shall believe, from the preponderance of the evidence in this

case, that at the time of the accident the servants of the defendant company negligently approached the said crossing with its train, without giving due and timely warning of its approach to said crossing, and that the failure to do so was the proximate cause of the injuries complained of, and that the deceased was free from any negligence on his part which contributed thereto, then your verdict should be for the plaintiff; or if you shall believe from the preponderance of the evidence that at the time of the accident the defendant was not in the exercise of due and reasonable care, that is, all the care and circumspection, prudence and discretion that an ordinarily prudent and careful man would have exercised under the circumstances, and that the want of such care and caution was the proximate cause of the injuries complained of, and that the deceased was free from any negligence on his part which contributed thereto, your verdict should be for the plaintiff. But if you shall believe that it has not been shown by a preponderance of the evidence that the negligence of the defendant was the proximate cause of the injuries complained of, or if you shall believe that the negligence of the deceased himself contributed to the injuries complained of, your verdict should be for the defendant.

If you find for the plaintiff, it should be for such a sum of money as will reasonably compensate her for any and all damages that she has sustained, or may hereafter sustain by reason of the death of her husband, David B. Nailor, basing your verdict upon the number of years the deceased would probably have lived had he not been killed.

In measuring damages in this case, you are not to be governed by what would probably have been the gross earnings or income of the deceased, but by what portion of the gross earnings or income the plaintiff would probably have received from the deceased as his wife, if he had lived.

Verdict for plaintiff.

The defendant took a bill of exceptions, and sued out a writ of error to the Superior Court, Sussex County, No. 7, June Term, 1915, Supreme Court. Heard at the January Term following.

CURTIS, Ch., PENNEWILL, C. J., and BOYCE, J., sitting.

*(April* 24, 1916).

The testimony material to the question before the court in this case may be stated as follows:

About five o'clock in the afternoon of July 20, 1913, the deceased, a veterinarian of Milford, Delaware, was proceeding in his automobile in an easterly direction, from Milton in Sussex County to the home of A. M. Jones. The other occupants of the car were Dr. Evans Roberts, who sat by the side of the deceased, Robert G. Wells and his son, Robert, and a son of A. M. Jones, who was taken in the car at Milton to show the way to his father's home. The deceased was operating the car, and so far as appears from the evidence he was entirely unfamiliar with the road and country over which he was passing.

The public road on which the party were traveling crosses at right angles, a short distance from Milton, the single track railroad line of the defendant company. About three hundred and fifty yards from the crossing there is a turn in the public road over which the automobile was running, at a point known as "Carey's Corner." Just north of the crossing, and on the west side of the road is a brickyard, buildings and kilns easily seen from a distance, and opposite, on the east side of the road about one hundred and fifty feet north of the crossing, stands Milby's house and barn. The crossing is known as the "Brickyard Crossing."

The automobile approached the crossing from Carey's Corner at a speed variously estimated by plaintiff's witnesses from ten to fifteen miles an hour. At the crossing the automobile struck the rear end of the tender of a west-bound train of the defendant which was running about thirty miles an hour. The deceased was killed by the collision, and Roberts was injured.

The physical conditions at and near the crossing at the time of the accident may be sufficiently described as follows:

The public road lies in a cut, and the bed of the railroad is slightly below the level of the public road and also runs in a cut at the crossing. Near to and south of the crossing the bank on the east side of the road is five or six feet high, and at the time of the accident corn was standing thereon. On the west there is an open field up to the right of way of the railroad. Within thirty feet of the track the road has a down grade of about two feet.

The view of the railroad track to the east, from the public road after leaving Carey's Corner, was entirely obstructed by the bank and standing corn until an occupant of the automobile was sixteen or eighteen feet from the nearest rail. The track itself was not visible more than about seventeen feet away. One or more witnesses testified that a person would not know there was a track there until he was within sixteen or seventeen feet of it.

Dr. Roberts told the deceased, about the time they turned Carey's Corner, that there was a bad crossing on that road either on this side or the other side of the brickyard. Nailor said: "We can easily find out by going slow."

The brickyard as well as the telegraph poles along defendant's track were visible all the way from Carey's Corner. The Jones boy, who was familiar with the crossing, was not asked for any information about the crossing, neither did he volunteer any.

Roberts testified that both he and Nailor were looking for the crossing after leaving Carey's Corner; and Roberts testified that he was also listening for a train but was not aware of the crossing or the train until it "flashed right out before us when we came out of the corn together." They were then about fifteen or eighteen feet from the track. Other witnesses said they were about thirty feet from the track when the train could first be seen. Just how far from the nearest rail the crossing is visible is not clear from the testimony. One witness testified that it is necessary to be within sixteen and a half feet of the track to see the ties and rails,—to tell there is a railway there. Another witness said twenty-five feet.

There was no danger or warning sign at the crossing. The cut through which the railroad runs is visible as far away as Carey's Corner, but the evidence does not show that the cut would indicate to a stranger the presence of a railroad.

The driver of the car did not stop it or slacken its speed after leaving Carey's Corner, for it was running at a speed of at least ten miles an hour when it struck the side of the train.

PENNEWILL, C. J., after stating the facts as above, delivered the opinion of the court.

The assignment of error relied on is the refusal of the court below to direct the jury to render a verdict for the defendant, because, as claimed by appellant, it clearly appears from the evidence of the plaintiff that the contributory negligence of the deceased was the proximate cause of his death.

The single question, therefore, before the court is whether the court below should have declared, as a matter of law, that the deceased, the driver of the automobile, was guilty of contributory negligence, and not entitled to recover.

[1] The negligence of the defendant is not material to the issue here, and the court's charge to the jury does not enter into

the case before us. The only question is,—should the court have allowed the case to go to the jury at all? If the evidence presented in behalf of the plaintiff clearly shows that the deceased's negligence was the proximate cause of his death, then the plaintiff was not entitled to recover no matter how negligent the defendant may have been, and the jury should have been directed to return a verdict for the defendant. If, however, the plaintiff's evidence does not clearly show such contributory negligence, then there was no error in refusing defendant's prayer for binding instructions.

The most significant and material facts in the case may be briefly stated as follows:

1. The deceased, who was driving the car, was wholly unfamiliar with the railroad crossing where the accident happened. It does not appear that he had ever traveled the road before.

2. The deceased was told by Roberts, who sat at his right side, that there was a bad crossing on the road, "either on this side or the other side of the brickyard"; and this information was given when they were not more than three hundred and fifty yards from the crossing.

The deceased heard and understood what Roberts said, because he answered: "We can easily find out by going slow."

3. The brickyard, on one side or the other of which was the crossing, was clearly visible to the occupants of the automobile all the way from Carey's Corner, a distance of about three hundred and fifty yards; and the cut through which the railroad ran, as well as the telegraph line, along defendant's road, were visible at a like distance.

4. The driver of an automobile could not, by looking, tell there was a railroad crossing in the cut until he was within about seventeen feet of the nearest track.

5. After leaving Carey's Corner the automobile was running at least ten miles an hour until it struck the train.

6. The view of the train approaching from the east, as well as of the track, was entirely obstructed by an embankment and standing corn, after leaving Carey's Corner, until the driver of the automobile was sixteen or eighteen feet from the track.

7.   At the time of the accident considerable sand had been blown on the crossing, which made the track more difficult to see.

The defendant contends that the deceased, having knowledge before the collision that there was a bad crossing on one side or the other of the brickyard, which was near and easily seen, and also of the cut, and line of telegraph poles, which were plainly visible, should in the exercise of due care have stopped his car, or at least have slackened its speed, in order to discover the crossing of the proximity and danger of which he had notice and warning.   And especially was this the deceased's duty, the defendant argues, because looking for an approaching train from the east was unavailing on account of obstructions to the view, and listening was equally unavailing because of the noise made by the running car.

With the knowledge the deceased had was it negligence on his part to run his automobile as he did into the cut, at a considerable down grade, when the crossing for which he was looking might be in the cut?

The defendant insists that while a line of poles and wires do not in these times necessarily indicate  the presence of a railroad, such facts, together with other facts of which deceased had knowledge, were sufficient to put him on his guard and prevent him from running his automobile into the cut, as he did, until he had discovered there was no danger; that a reasonably careful and prudent man, having the knowledge the deceased possessed, and with the view of an approaching train obstructed, would have either stopped his car or so reduced its speed as to be able to stop it immediately before driving it into the cut.

The contention of the plaintiff is briefly this:

That the deceased was entirely unfamilar with the road over which he was passing, had no knowledge of the exact location of the railroad, and because of his inability to see the track until almost upon it, he could not by the exercise of due care avoid collision with the train which was not visible until it "flashed right on him."

[2]   A part of the plaintiff's testimony establishes such facts, and it is a familiar rule of law, that in determining such a ques-

tion as is now before the court, that testimony must be accepted as true which is most favorable to the plaintiff.

[3]   Under the testimony in this case respecting obstructions to the view, the court are of the opinion that they cannot say as matter of law that the deceased could have seen the train in time to avoid the accident. Whether he could or could not was a question for the jury to determine under instructions from the court.

It was testified by one or more of plaintiff's witnesses that some of the occupants of the automobile looked and listened till the accident happened, and neither saw nor heard the train.

[4]   We cannot, therefore, say, as matter of law, that by the exercise of proper care the deceased could have heard the train if he had listened. Whether he could or not was likewise a question for the jury.

The case then is narrowed to a single point, viz.:

Whether the court can say, as a matter of law, that the deceased could by the exercise of due care and caution have discovered the crossing in time to avoid the accident by stopping his car or reducing its speed.

We may say here that the cases cited by counsel are of but little assistance to the court, because in none of them are those features present which distinguish this case.

In the cases cited by the appellant the driver was either familiar with the crossing, or it was plainly visible for a considerable distance. He knew the location of the crossing in time to avoid the accident by exercising proper care. There is one case where the driver could not see the crossing, but it was on account of darkness. He was traveling at night.

In the cases cited by the appellee the driver was either unfamiliar with the crossing, or could not see it until too close to avoid collision.

But there was no case cited like the present one, where the driver of the automobile was unfamiliar with the road, and the crossing was very difficult to see, but the driver nevertheless had notice that there was a bad crossing on the road about four hundred yards ahead. That is the particular feature that distinguishes this case from those cited on either side.

Assuming that it is the duty of the driver of an automobile to stop his car before crossing the tracks of a railroad company, when both looking and listening are unavailing, the question would still remain in this case—where would he stop? From the information he received from Roberts the deceased knew there was a crossing on one side or the other of a brickyard which was plainly visible, but the crossing might be anywhere within a distance of two hundred yards or more. On one side or the other of a certain object, is very indefinite as to exact location. With the knowledge he had, was the deceased required to stop his car every few yards, if required to stop at all? That would probably have been necessary to avoid the accident because the crossing could not be seen at a distance greater than seventeen feet.

But the deceased was not told that the railroad was very difficult to see, or that it could not be seen more than five or six yards away.

It is true the cut was visible three hundred and fifty yards away, but the deceased was not informed, and did not have to assume that the railroad was in the cut.

It is also true that the telegraph line was along the railroad, and is generally found on the right of way of a railroad company, but in this day a telegraph or telephone line is as frequently seen along the public highway, and it does not, therefore, necessarily indicate the presence of a railroad.

[5] We cannot assume that the deceased would have seen the track or the train in time to avoid the accident if the automobile had been running at a lower speed than ten miles an hour. The speed at which it was running may have been excessive under the circumstances, but it does not follow that that was the cause of the collision. Manifestly the court cannot declare, as a matter of law, that because he was running his automobile at ten miles an hour, the deceased was guilty of negligence that contributed proximately to his death.

[6-8] If the track could not be seen till the driver was within seventeen feet of the rail, then the front of the automobile was within ten feet or less of the side of the car which extended beyond the rail. Under the conditions then existing it is doubt-

Opinion.

ful, at least, that an automobile running at five miles an hour could have been stopped in time. But whether it could or not was a question for the jury to determine under all the evidence. And in this connection another principle of law should be considered, viz.:

"Where a traveler, without any fault on his part, is suddenly placed in a position of imminent peril at a crossing, the law will not hold him guilty of contributory negligence if he does not select the wisest course, or do the safest thing: all that is required of him in such an emergency is that he act with due care under the circumstances, it being for the jury to determine whether such an emergency existed, and whether the traveler acted with due care."

If the testimony clearly showed that the deceased, not being able to see or hear the approaching train on account of obstructions and noise, saw the crossing in time to stop his car and by so doing avoid the accident, the court would be required to decide, as a matter of law, whether he was guilty of contributory negligence that proximately contributed to the accident, in not stopping his car. This question was fully argued by counsel on both sides of the case.

But the testimony does not establish such facts; on the contrary some of the testimony shows that the crossing could not be seen in time to avoid the accident by stopping the car.

Some courts, both state and federal, have declared that if, because of obstructions, looking is unavailing, and because of noise made by the automobile, listening is also unavailing, it is the duty of the driver to stop his car before driving upon the tracks at a railroad crossing if he can do it by the exercise of due care, and by so doing avoid the accident. And a distinction respecting this duty has been made between automobiles and other vehicles.

In the case of *New York Central & Hudson River R. R. Co. v. Maidment*, 168 *Fed.* 21, 93 *C. C. A.* 413, 21 *L. R. A.* (*N. S.*) 794, the court said:

"With the coming into use of the automobile, new questions as to reciprocal rights and duties of the public and that vehicle have and will continue to arise. At no place are those relations more important than at the grade crossings of railroads. The main consideration hitherto with reference to such crossings has been the danger to those crossing. A ponderous, swiftly

moving locomotive, followed by a heavy train, is subjected to slight danger by a crossing foot passenger, or a span of horses and a vehicle; but, when the passing vehicle is a ponderous steel structure, it threatens, not only the safety of its own occupants, but also those on the colliding train.  *  *  * Such being the case, the law, both from the standpoint of his own safety and the menace his machine is to the safety of others, should, in meeting these new conditions, rigidly hold the automobile driver to such reasonable care and precaution as to go to his own safety and that of the traveling public. If the law demands such care, and those crossing make such care, and not chance, their protection, the possibilities of automobile crossing accidents will be minimized.  *  *  *

"The duty of an automobile driver approaching tracks where there is restricted vision to stop, look and listen, and to do so at a time and place where stopping and where looking and where listening will be effective, is a positive duty."

*Elliott on Railroads, Volume 3, Section* 1167, states the general rule as follows:

"Ordinary care often requires that the traveler should stop, look and listen for moving trains, from a place where danger can be discerned and precaution taken to avert it.  If, for instance, the noise is so great that an approaching train cannot be heard, and the obstructions are such that it cannot be seen, then the traveler must come to a halt and look and listen. It cannot be said that one who simply looks and listens where he knows, or should know, such acts are fruitless and unavailing, exercises that degree of care which the law requires.  While it cannot be justly affirmed, as we believe, as matter of law, that there is a duty to stop in all cases, yet there are cases where the failure to stop must be deemed such a breach of duty as will defeat a recovery by the plaintiff."

"The rule is now firmly established in this state, as it is elsewhere," says Chief Justice Alvey, in *Railroad Co. v. Hogeland*, 66 *Md.* 149, 161, 7 *Atl.* 105, 107 (59 *Am. Rep.* 159), "that it is negligence *per se* for any person to attempt to cross tracks of a railroad without first looking and listening for approaching trains; and if the track in both directions is not fully in view in the immediate approach to the point of intersection of the roads, due care would require that the party wishing to cross the railroad track should stop, look, and listen, before attempting to cross.  Especially is this required where a party is approaching such crossing in a vehicle, the noise from which may prevent the approach of a train being heard.  And if a party neglect these necessary precautions, and receives injury by collision with a passing train, which might have been seen if he had looked, or heard if he had listened, he will be presumed to have contributed, by his own negligence, to the occurrence of the accident."

[9]  While the rule expressed by these authorities has been followed in very many modern cases, it cannot be applied in the case before the court, because the question here is not whether the deceased should have stopped his car before the collision, but whether he could under the circumstances and in the exercise of due care, have stopped it in time to avoid the accident.  That, as

we have before said was necessarily a question for the jury to determine under proper instructions from the court, and not for the court to decide as a matter of law. It was one of the controverted facts or inferences in the case, and was properly submitted to the jury by the trial court in a charge which clearly explained the respective contentions of the parties and the law applicable to the facts. It is only in clear cases where the facts are undisputed and but one reasonable inference can be drawn from them that courts can declare as a matter of law a party guilty of contributory negligence.